## VOLT INFORMATION SCIENCES, INC. *v.* BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY

No. 87–1318. Argued November 30, 1988—Decided March 6, 1989

Rehnquist, C. J., delivered the opinion of the Court, in which White, Blackmun, Stevens, Scalia, and Kennedy, JJ., joined. Brennan, J., filed a dissenting opinion, in which Marshall, J., joined, *post*, p. 479. O'Connor, J., took no part in the consideration or decision of the case.

*James E. Harrington* argued the cause for appellant. With him on the briefs were *Robert B. Thum* and *Deanne M. Tully*.

*David M. Heilbron* argued the cause for appellee. With him on the brief was *Leslie G. Landau*.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Unlike its federal counterpart, the California Arbitration Act, Cal. Civ. Proc. Code Ann. § 1280 *et seq.* (West 1982), contains a provision allowing a court to stay arbitration pending resolution of related litigation. We hold that application of the California statute is not pre-empted by the Federal Arbitration Act (FAA or Act), 9 U. S. C. § 1 *et seq.*, in a case where the parties have agreed that their arbitration agreement will be governed by the law of California.

Appellant Volt Information Sciences, Inc. (Volt), and appellee Board of Trustees of Leland Stanford Junior University (Stanford) entered into a construction contract under which Volt was to install a system of electrical conduits on the Stanford campus. The contract contained an agreement to arbitrate all disputes between the parties "arising out of or relating to this contract or the breach thereof."[1] The contract also contained a choice-of-law clause providing that "[t]he Contract shall be governed by the law of the place where the Project is located." App. 37. During the course of the project, a dispute developed regarding compensation for extra work, and Volt made a formal demand for arbitration. Stanford responded by filing an action against Volt

---

[1] The arbitration clause read in full as follows:

"All claims, disputes and other matters in question between the parties to this contract, arising out of or relating to this contract or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then prevailing unless the parties mutually agreed *[sic]* otherwise. . . . This agreement to arbitrate . . . shall be specifically enforceable under the prevailing arbitration law." App. 40.

in California Superior Court, alleging fraud and breach of contract; in the same action, Stanford also sought indemnity from two other companies involved in the construction project, with whom it did not have arbitration agreements. Volt petitioned the Superior Court to compel arbitration of the dispute.[2] Stanford in turn moved to stay arbitration pursuant to Cal. Civ. Proc. Code Ann. § 1281.2(c) (West 1982), which permits a court to stay arbitration pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by it, where "there is a possibility of conflicting rulings on a common issue of law or fact."[3] The Superior Court denied Volt's motion to compel arbitration and stayed the arbitration proceedings pending the outcome of the litigation on the authority of § 1281.2(c). App. 59–60.

The California Court of Appeal affirmed. The court acknowledged that the parties' contract involved interstate

---

[2] Volt's motion to compel was apparently brought pursuant to § 4 of the FAA, 9 U. S. C. § 4, and the parallel provision of the California Arbitration Act, Cal. Civ. Proc. Code Ann. § 1281.2 (West 1982); the motion cited both Acts as authority, but did not specify the particular sections upon which reliance was placed. App. 45–46. Volt also asked the court to stay the Superior Court litigation until the arbitration was completed, presumably pursuant to § 3 of the FAA, 9 U. S. C. § 3, and the parallel provision of the California Arbitration Act, Cal. Civ. Proc. Code Ann. § 1281.2(c)(3) (West 1982). App. 45–46.

[3] Section 1281.2(c) provides, in pertinent part, that when a court determines that "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact[,] . . . the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding."

commerce, that the FAA governs contracts in interstate commerce, and that the FAA contains no provision permitting a court to stay arbitration pending resolution of related litigation involving third parties not bound by the arbitration agreement. App. 64–65. However, the court held that by specifying that their contract would be governed by "'the law of the place where the project is located,'" the parties had incorporated the California rules of arbitration, including § 1281.2(c), into their arbitration agreement. *Id.*, at 65. Finally, the court rejected Volt's contention that, even if the parties had agreed to arbitrate under the California rules, application of § 1281.2(c) here was nonetheless pre-empted by the FAA because the contract involved interstate commerce. *Id.*, at 68–80.

The court reasoned that the purpose of the FAA was "'not [to] mandate the arbitration of all claims, but merely the enforcement . . . of privately negotiated arbitration agreements.'" *Id.*, at 70 (quoting *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 219 (1985)). While the FAA therefore pre-empts application of state laws which render arbitration agreements unenforceable, "[i]t does not follow, however, that the federal law has preclusive effect in a case where the parties have chosen in their [arbitration] agreement to abide by state rules." App. 71. To the contrary, because "[t]he thrust of the federal law is that arbitration is strictly a matter of contract," *ibid.*, the parties to an arbitration agreement should be "at liberty to choose the terms under which they will arbitrate." *Id.*, at 72. Where, as here, the parties have chosen in their agreement to abide by the state rules of arbitration, application of the FAA to prevent enforcement of those rules would actually be "inimical to the policies underlying state and federal arbitration law," *id.*, at 73, because it would "force the parties to arbitrate in a manner contrary to their agreement." *Id.*, at 65. The California Supreme

Court denied Volt's petition for discretionary review. *Id.*, at 87. We postponed consideration of our jurisdiction to the hearing on the merits. 485 U. S. 976 (1988). We now hold that we have appellate jurisdiction[4] and affirm.

---

[4] Under 28 U. S. C. § 1257(2), this Court has appellate jurisdiction to review a final judgment rendered by the highest court of a State in which a decision could be had "where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity." Here appellant explicitly drew in question the validity of Cal. Civ. Proc. Code Ann. § 1281.2(c) (West 1982) on federal grounds, contending that the statute, as applied to stay arbitration of this dispute, was pre-empted by the FAA and thus invalid under the Supremacy Clause. Because the California Court of Appeal upheld application of the statute against this challenge, our appellate jurisdiction would seem to be assured. See *Longshoremen* v. *Davis*, 476 U. S. 380, 387, n. 8 (1986) (§ 1257(2) jurisdiction exists when a state statute is upheld against a claim that its application to a particular set of facts is pre-empted by federal law); *McCarty* v. *McCarty*, 453 U. S. 210, 219–220, n. 12 (1981) (same). Appellee contends, however, that § 1257(2) jurisdiction does not exist because the Court of Appeal's decision did not directly address the validity of the statute itself, but "simply uph[eld] the validity of the parties' agreement," which in turn required application of the statute. Brief for Appellee 4. Because an agreement is not a "statute," appellee argues, the Court of Appeal's decision is not one from which an appeal under § 1257(2) will lie. *Id.*, at 4–5.

We disagree. Our decisions establish that "a state statute is sustained within the meaning of § 1257(2) when a state court holds it applicable to a particular set of facts as against the contention that such application is invalid on federal grounds." *Japan Line, Ltd.* v. *County of Los Angeles*, 441 U. S. 434, 441 (1979) (citing *Cohen* v. *California*, 403 U. S. 15, 17–18 (1971); *Warren Trading Post Co.* v. *Arizona Tax Comm'n*, 380 U. S. 685, 686, and n. 1 (1965); *Bantam Books, Inc.* v. *Sullivan*, 372 U. S. 58, 61, n. 3 (1963); *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282, 288–290 (1921)), regardless of "the particular grounds or reasons on which the [state court's] decision is put." *Id.*, at 289. In this case, appellant contended before the Court of Appeal that even if the contract required application of Cal. Civ. Proc. Code Ann. § 1281.2(c) (West 1982), the California statute, as applied to stay arbitration under this contract in interstate commerce, so conflicted with the FAA that it was invalid under the Supremacy Clause. The Court of Appeal upheld application of the statute against this chal-

Appellant devotes the bulk of its argument to convincing us that the Court of Appeal erred in interpreting the choice-of-law clause to mean that the parties had incorporated the California rules of arbitration into their arbitration agreement. See Brief for Appellant 66–96. Appellant acknowledges, as it must, that the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review. See *id.*, at 26, 29. But appellant nonetheless maintains that we should set aside the Court of Appeal's interpretation of this particular contractual provision for two principal reasons.

Appellant first suggests that the Court of Appeal's construction of the choice-of-law clause was in effect a finding that appellant had "waived" its "federally guaranteed right to compel arbitration of the parties' dispute," a waiver whose validity must be judged by reference to federal rather than state law. *Id.*, at 17, 30–36. This argument fundamentally misconceives the nature of the rights created by the FAA. The Act was designed "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," *Byrd, supra*, at 219–220, and place such agreements "'upon the same footing as other contracts,'" *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506, 511 (1974) (quoting H. R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). Section 2 of the Act therefore declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U. S. C. § 2, and § 4 allows a party to such an arbitration agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."

But § 4 of the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the

---

lenge, and under *Dahnke-Walker* and its progeny, that was sufficient to bring the case within the terms of § 1257(2), even though the court's decision may have been premised on its interpretation of the contract.

right to obtain an order directing that "arbitration proceed *in the manner provided for in [the parties'] agreement.*" 9 U. S. C. § 4 (emphasis added). Here the Court of Appeal found that, by incorporating the California rules of arbitration into their agreement, the parties had agreed that arbitration would not proceed in situations which fell within the scope of Calif. Code Civ. Proc. Ann. § 1281.2(c) (West 1982). This was not a finding that appellant had "waived" an FAA-guaranteed right to compel arbitration of this dispute, but a finding that it had no such right in the first place, because the parties' agreement did not require arbitration to proceed in this situation. Accordingly, appellant's contention that the contract interpretation issue presented here involves the "waiver" of a federal right is without merit.

Second, appellant argues that we should set aside the Court of Appeal's construction of the choice-of-law clause because it violates the settled federal rule that questions of arbitrability in contracts subject to the FAA must be resolved with a healthy regard for the federal policy favoring arbitration. Brief for Appellant 49–52; *id.*, at 92–96, citing *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1, 24–25 (1983) (§ 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," which requires that "questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues . . . be resolved in favor of arbitration"); *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 626 (1985) (in construing an arbitration agreement within the coverage of the FAA, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability"). These cases of course establish that, in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, see *Perry* v. *Thomas*, 482 U. S. 483, 493, n. 9 (1987),

due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.

But we do not think the Court of Appeal offended the *Moses H. Cone* principle by interpreting the choice-of-law provision to mean that the parties intended the California rules of arbitration, including the § 1281.2(c) stay provision, to apply to their arbitration agreement. There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction set forth in *Moses H. Cone*, nor does it offend any other policy embodied in the FAA.[5]

The question remains whether, assuming the choice-of-law clause meant what the Court of Appeal found it to mean, application of Cal. Civ. Proc. Code Ann. § 1281.2(c) is nonetheless pre-empted by the FAA to the extent it is used to stay arbitration under this contract involving interstate commerce. It is undisputed that this contract falls within the coverage of the FAA, since it involves interstate commerce, and that the FAA contains no provision authorizing a stay of arbitration in this situation. Appellee contends, however, that §§ 3 and 4 of the FAA, which are the specific sections

---

[5] Unlike the dissent, see *post* at 486–487, we think the California arbitration rules which the parties have incorporated into their contract generally foster the federal policy favoring arbitration. As indicated, the FAA itself contains no provision designed to deal with the special practical problems that arise in multiparty contractual disputes when some or all of the contracts at issue include agreements to arbitrate. California has taken the lead in fashioning a legislative response to this problem, by giving courts authority to consolidate or stay arbitration proceedings in these situations in order to minimize the potential for contradictory judgments. See Calif. Civ. Proc. Code Ann. § 1281.2(c).

claimed to conflict with the California statute at issue here, are not applicable in this state-court proceeding and thus cannot pre-empt application of the California statute. See Brief for Appellee 43–50. While the argument is not without some merit,[6] we need not resolve it to decide this case, for we conclude that even if §§ 3 and 4 of the FAA are fully applicable in state-court proceedings, they do not prevent application of Cal. Civ. Proc. Code Ann. § 1281.2(c) to stay arbitration where, as here, the parties have agreed to arbitrate in accordance with California law.

The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. See *Bernhardt* v. *Polygraphic Co.*, 350 U. S. 198 (1956) (upholding application of state arbitration law to arbitration provision in contract not covered by the FAA). But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law—that is, to the extent that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines* v. *Davidowitz*, 312 U. S. 52, 67 (1941). The question before us, therefore, is whether application of Cal. Civ. Proc. Code Ann. § 1281.2(c) to stay arbitration under this contract in interstate commerce, in accordance with the terms of the arbitration agreement itself,

---

[6] While we have held that the FAA's "substantive" provisions—§§ 1 and 2—are applicable in state as well as federal court, see *Southland Corp.* v. *Keating*, 465 U. S. 1, 12 (1984), we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court, see 9 U. S. C. § 3 (referring to proceedings "brought in any of the courts of the United States"); § 4 (referring to "any United States district court"), are nonetheless applicable in state court. See *Southland Corp* v. *Keating*, *supra*, at 16, n. 10 (expressly reserving the question whether "§§ 3 and 4 of the Arbitration Act apply to proceedings in state courts"); see also *id.*, at 29 (O'CONNOR, J., dissenting) (§§ 3 and 4 of the FAA apply only in federal court).

would undermine the goals and policies of the FAA. We conclude that it would not.

The FAA was designed "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S., at 219–220, and to place such agreements "'upon the same footing as other contracts,'" *Scherk* v. *Alberto-Culver Co.*, 417 U. S., at 511 (quoting H. R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." *Byrd*, 470 U. S., at 220. Accordingly, we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so, see *id.*, at 219 (the Act "does not mandate the arbitration of all claims"), nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement, see *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S., at 628 (citing *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U. S. 395, 406 (1967)). It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms. See *Prima Paint, supra*, at 404, n. 12 (the Act was designed "to make arbitration agreements as enforceable as other contracts, but not more so").

In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, we have held that the FAA pre-empts state laws which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp.* v. *Keating*, 465 U. S. 1, 10 (1984). See, *e. g., id.*, at 10–16 (finding pre-empted a state statute which rendered agreements to arbitrate certain franchise claims unenforceable); *Perry* v. *Thomas*, 482 U. S., at 490 (finding pre-empted a state statute which rendered unen-

forceable private agreements to arbitrate certain wage collection claims). But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, see *Mitsubishi, supra,* at 628, so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms, see *Byrd, supra,* at 221, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE O'CONNOR took no part in the consideration or decision of this case.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

The litigants in this case were parties to a construction contract which contained a clause obligating them to arbitrate disputes and making that obligation specifically enforceable. The contract also incorporated provisions of a standard form contract prepared by the American Institute of Architects and endorsed by the Associated General Contractors of America; among these general provisions was § 7.1.1: "The

Contract shall be governed by the law of the place where the Project is located."[1] When a dispute arose between the parties, Volt invoked the arbitration clause, while Stanford attempted to avoid it (apparently because the dispute also involved two other contractors with whom Stanford had no arbitration agreements).

The Federal Arbitration Act (FAA), 9 U. S. C. § 1 *et seq.*, requires courts to enforce arbitration agreements in contracts involving interstate commerce. See *ante*, at 474. The California courts nonetheless rejected Volt's petition to compel arbitration in reliance on a provision of state law that, in the circumstances presented, permitted a court to stay arbitration pending the conclusion of related litigation. Volt, not surprisingly, suggested that the Supremacy Clause compelled a different result. The California Court of Appeal found, however, that the parties had agreed that their contract would be governed solely by the law of the State of California, to the exclusion of federal law.[2] In reaching this

---

[1] American Institute of Architects Document A201, General Conditions of the Contract for Construction § 7.1.1 (1976). See App. 40.

[2] The California Court of Appeal correctly assumed that the FAA, were it applicable, would pre-empt the provisions of Cal. Civ. Proc. Code Ann. § 1281.2(c) (West 1982): "[I]t is apparent that were the federal rules to apply, Volt's petition to compel arbitration would have to be granted." App. 65.

Stanford nonetheless attempts to cast doubt on this conclusion by arguing that §§ 3 and 4 of the FAA, which provide for court orders to stay litigation and to compel arbitration, are not applicable in state court. Brief for Appellee 43–50. While we have stated that "state courts, as much as federal courts, are obliged to grant stays of litigation under § 3 of the Arbitration Act," *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1, 26 (1983); see also *id.*, at 26, nn. 34–35, it is immaterial to the resolution of this case whether §§ 3 and 4 actually "apply." The parties here not only agreed to arbitrate, but they also agreed that that agreement would be specifically enforceable. See *ante*, at 470, n. 1. FAA § 2—which indisputably does apply in state court, *Southland Corp.* v. *Keating*, 465 U. S. 1 (1984)—requires the court to enforce the parties' agreement. (Indeed, *Southland Corp.* can be read to stand for the proposition that § 2 makes *all* arbitration agreements specifically enforceable. See

conclusion the court relied on no extrinsic evidence of the parties' intent, but solely on the language of the form contract that the "'law of the place where the project is located'" would govern. App. 66–67.[3]

This Court now declines to review that holding, which denies effect to an important federal statute, apparently because it finds no question of federal law involved. I can accept neither the state court's unusual interpretation of the parties' contract, nor this Court's unwillingness to review it. I would reverse the judgment of the California Court of Appeal.[4]

## I

Contrary to the Court's view, the state court's construction of the choice-of-law clause is reviewable for two independent reasons.

## A

The Court's decision not to review the state court's interpretation of the choice-of-law clause appears to be based on the principle that "the interpretation of private contracts is ordinarily a question of state law, which this Court does

*id.,* at 31, and n. 20 (O'CONNOR, J., dissenting).) To stay the arbitration proceedings pending litigation of the same issues, as § 1281.2(c) provides, is not compatible with specific enforcement of the agreement to arbitrate — which is what the FAA requires here. Section 1281.2(c) therefore cannot be given effect unless — as the California Court of Appeal held — the parties somehow agreed that federal law was to play no role in governing their contract.

[3]The court held that "the word 'place' was intended to mean the forum state." App. 66. It added: "We do not find reasonable Volt's interpretation that the 'place' where the project is located be construed to mean not only the state of California but also the nation of the United States of America." *Id.,* at 67.

[4]I do not disagree with the Court's holding, *ante,* at 477–479, that the FAA does not pre-empt state arbitration rules, even as applied to contracts involving interstate commerce, when the parties have agreed to arbitrate by those rules to the exclusion of federal arbitration law. I would not reach that question, however, because I conclude that the parties have made no such agreement.

not sit to review." *Ante,* at 474. I have no quarrel with the general proposition that the interpretation of contracts is a matter of state law. By ending its analysis at that level of generality, however, the Court overlooks well-established precedent to the effect that, in order to guard against arbitrary denials of federal claims, a state court's construction of a contract in such a way as to preclude enforcement of a federal right is not immune from review in this Court as to its "adequacy."

Many of our cases that so hold involve, understandably enough, claims under the Contract Clause. In *Appleby* v. *City of New York,* 271 U. S. 364 (1926), for example, petitioners alleged that the city had unconstitutionally impaired their rights contained in a contract deeding them certain submerged lands in the city harbor. Chief Justice Taft stated the issue for the Court as follows:

> "The questions we have here to determine are, first, was there a contract, second, what was its proper construction and effect, and, third, was its obligation impaired by subsequent legislation as enforced by the state court? These questions we must answer independently of the conclusion of [the state] court. Of course we should give all proper weight to its judgment, but we can not perform our duty to enforce the guaranty of the Federal Constitution as to the inviolability of contracts by state legislative action unless we give the questions independent consideration." *Id.,* at 379–380.

Similarly, in *Indiana ex rel. Anderson* v. *Brand,* 303 U. S. 95 (1938), the question was whether the State's repeal of a teacher tenure law had impaired petitioner's contract of employment. We reversed the judgment of the State Supreme Court, notwithstanding that it rested on the state ground that petitioner had had no contractual right to continued employment: "On such a question, one primarily of state law, we accord respectful consideration and great weight to the views of the State's highest court but, in order that the constitu-

tional mandate may not become a dead letter, we are bound to decide for ourselves whether a contract was made, what are its terms and conditions, and whether the State has, by later legislation, impaired its obligation." *Id.*, at 100. See also *Phelps* v. *Board of Education of West New York*, 300 U. S. 319, 322–323 (1937); *Irving Trust Co.* v. *Day*, 314 U. S. 556, 561 (1942).

The issue has not arisen solely in cases brought under the Contract Clause. *Memphis Gas Co.* v. *Beeler*, 315 U. S. 649 (1942), was a Commerce Clause case where appellant's constitutional challenge to a state tax was dependent on a particular interpretation of a contract under which appellant operated. While we sustained the Tennessee court's construction of that contract (and thus did not reach the federal issue), we emphasized that the "meaning and effect of the contract" were "local questions conclusively settled by the decision of the state court save only as this Court, in the performance of its duty to safeguard an asserted constitutional right, may inquire whether the decision of the state question rests upon a fair or substantial basis." *Id.*, at 654.

Indeed, our ability to review state-law decisions in such circumstances is not limited to the interpretation of contracts. In *Rogers* v. *Alabama*, 192 U. S. 226 (1904), we noted the

> "necessary and well settled rule that the exercise of jurisdiction by this court to protect constitutional rights cannot be declined when it is plain that the fair result of a decision is to deny the rights. It is well known that this court will decide for itself whether a contract was made as well as whether the obligation of the contract has been impaired. But that is merely an illustration of a more general rule." *Id.*, at 230 (citation omitted).

We accordingly reversed the state court's dismissal, on grounds of "prolixity," of petitioner's motion to quash an

indictment returned against him by a grand jury from which all blacks had been excluded.[5]

While in this case the federal right at issue is a statutory, not a constitutional, one, the principle under which we review the antecedent question of state law is the same. Where "the existence or the application of a federal right turns on a logically antecedent finding on a matter of state law, it is essential to the Court's performance of its function that it exercise an ancillary jurisdiction to consider the state question. Federal rights could otherwise be nullified by the manipulation of state law." Wechsler, The Appellate Jurisdiction of the Supreme Court: Reflections on the Law and the Logistics of Direct Review, 34 Wash. & Lee L. Rev. 1043, 1052 (1977). See also Hill, The Inadequate State Ground, 65 Colum. L. Rev. 943 (1965).

No less than in the cited cases, the right of the instant parties to have their arbitration agreement enforced pursuant to the FAA could readily be circumvented by a state-court construction of their contract as having intended to exclude the applicability of federal law. It is therefore essential that, while according due deference to the decision of the state court, we independently determine whether we "clearly would have judged the issue differently if [we] were the state's highest court." Wechsler, *supra*, at 1052.[6]

---

[5] As in *Rogers*, we have frequently declined to be bound by state procedural rulings that would have prevented us from reaching the federal issue. See, *e. g., Davis* v. *Wechsler*, 263 U. S. 22, 24 (1923); *Brown* v. *Western R. Co. of Ala.*, 338 U. S. 294, 295–297 (1949); *NAACP* v. *Alabama ex rel. Patterson*, 357 U. S. 449, 454–458 (1958); *James* v. *Kentucky*, 466 U. S. 341, 348–349 (1984). While in recent years we may have been more willing to examine state procedural rulings, see *e. g., Henry* v. *Mississippi*, 379 U. S. 443 (1965), one study of our cases has concluded that we have historically shown less deference to state *substantive* decisions on ancillary questions than to similar procedural decisions. Hill, The Inadequate State Ground, 65 Colum. L. Rev. 943, 991 (1965); cf. *Davis, supra*, at 25.

[6] While the principle of independent review by this Court of the adequacy of the state court's ruling is clear, the proper standard for such

## B

Arbitration is, of course, "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers* v. *Warrior & Gulf Co.*, 363 U. S. 574, 582 (1960). I agree with the Court that "the FAA does not require parties to arbitrate when they have not agreed to do so." *Ante*, at 478. Since the FAA merely requires enforcement of what the parties have agreed to, moreover, they are free if they wish to write an agreement to arbitrate outside the coverage of the FAA. Such an agreement would permit a state rule, otherwise preempted by the FAA, to govern their arbitration. The substantive question in this case is whether or not they have done so. And that question, we have made clear in the past, is a matter of federal law.

Not only does the FAA require the enforcement of arbitration agreements, but we have held that it also establishes substantive federal law that must be consulted in determining whether (or to what extent) a given contract provides for arbitration. We have stated this most clearly in *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1, 24–25 (1983):

> "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements,

---

review poses a more difficult question. Indeed, our cases have employed a wide range of standards, ranging from *de novo* review, *e. g.*, *Appleby* v. *City of New York*, 271 U. S. 364, 380 (1926) ("[W]e must give our own judgment . . . and not accept the present conclusion of the state court without inquiry"), to inquiring whether the state judgment rested on a "fair or substantial basis," *Memphis Gas Co.* v. *Beeler*, 315 U. S. 649, 654 (1942); *Demorest* v. *City Bank Co.*, 321 U. S. 36, 42 (1944), to determining whether the state court's decision was "palpably erroneous," *Phelps* v. *Board of Education of West New York*, 300 U. S. 319, 323 (1937). I have no doubt that the proper standard of review is a narrow one, but I see no need for purposes of the present case to settle on a precise formulation. As will appear below, the state court's construction of the choice-of-law clause cannot be sustained regardless of the standard employed.

notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. . . . [T]he Courts of Appeals have . . . consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

More recently, in *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614 (1985), we stated that a court should determine whether the parties agreed to arbitrate a dispute "by applying the 'federal substantive law of arbitrability.'" *Id.*, at 626, quoting *Moses H. Cone, supra*, at 24. See also *Southland Corp.* v. *Keating*, 465 U. S. 1 (1984).

The Court recognizes the relevance of the *Moses H. Cone* principle but finds it unoffended by the Court of Appeal's decision, which, the Court suggests, merely determines what set of procedural rules will apply. *Ante*, at 476.[7] I agree fully with the Court that "the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate," *ibid.*, but I disagree emphatically

---

[7] Some of the Court's language might be read to suggest that the *Moses H. Cone* principle applies only to construction of the arbitration clause itself. *Ante*, at 476 ("[A]mbiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration"). Such a reading is flatly contradicted by *Moses H. Cone*. In language the Court omits from its quotation, *ante*, at 475, we made clear that the liberal rule of construction in favor of arbitrability applies "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital*, 460 U. S., at 25.

with its conclusion that that policy is not frustrated here. Applying the California procedural rule, which stays arbitration while litigation of the same issue goes forward, means simply that the parties' dispute will be litigated rather than arbitrated. Thus, interpreting the parties' agreement to say that the California procedural rules apply rather than the FAA, where the parties arguably had no such intent, implicates the *Moses H. Cone* principle no less than would an interpretation of the parties' contract that erroneously denied the existence of an agreement to arbitrate.[8]

While appearing to recognize that the state court's interpretation of the contract does raise a question of federal law, the Court nonetheless refuses to determine whether the state court misconstrued that agreement. There is no warrant for failing to do so. The FAA requires that a court determining a question of arbitrability not stop with the application of state-law rules for construing the parties' intentions, but that it also take account of the command of federal law that "those intentions [be] generously construed as to issues of arbitrability." *Mitsubishi Motors, supra,* at 626. Thus, the decision below is based on both state and federal law, which are thoroughly intertwined. In such circumstances the state-court judgment cannot be said to rest on an "adequate and independent state ground" so as to bar review by this Court. See *Enterprise Irrigation Dist.* v. *Farmers Mutual Canal Co.,* 243 U. S. 157, 164 (1917) ("But where the non-federal

---

[8] Whether or not "the California arbitration rules . . . generally foster the federal policy favoring arbitration," *ante,* at 476, n. 5, is not the relevant question. Section 2 of the FAA requires courts to enforce agreements to arbitrate, and in *Moses H. Cone* we held that doubts as to whether the parties had so agreed were to be resolved in favor of arbitration. Whether California's arbitration rules are more likely than federal law to foster arbitration, *i. e.,* to induce parties to agree to arbitrate disputes, is another matter entirely. On that question it is up to Congress, not this Court, to "fashio[n] a legislative response," *ante,* at 476, n. 5, and in the meantime we are not free to substitute our notions of good policy for federal law as currently written.

ground is so interwoven with the other as not to be an independent matter . . . our jurisdiction is plain"). With a proper application of federal law in this case, the state court's judgment might have been different, and our review is therefore not barred. Cf. *Ake* v. *Oklahoma*, 470 U. S. 68, 74–75 (1985) ("[W]hen resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded").

## II

Construed with deference to the opinion of the California Court of Appeal, yet "with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone*, 460 U. S., at 24, it is clear that the choice-of-law clause cannot bear the interpretation the California court assigned to it.

Construction of a contractual provision is, of course, a matter of discerning the parties' intent. It is important to recall, in the first place, that in this case there is no extrinsic evidence of their intent. We must therefore rely on the contract itself. But the provision of the contract at issue here was not one that these parties drafted themselves. Rather, they incorporated portions of a standard form contract commonly used in the construction industry. That makes it most unlikely that their intent was in any way at variance with the purposes for which choice-of-law clauses are commonly written and the manner in which they are generally interpreted.

It seems to me beyond dispute that the normal purpose of such choice-of-law clauses is to determine that the law of one State rather than that of another State will be applicable; they simply do not speak to any interaction between state and federal law. A cursory glance at standard conflicts texts confirms this observation: they contain no reference at all to the relation between federal and state law in their discussions of contractual choice-of-law clauses. See, *e. g.*,

R. Weintraub, Commentary on the Conflict of Laws § 7.3C (2d ed. 1980); E. Scoles & P. Hay, Conflict of Laws 632–652 (1982); R. Leflar, L. McDougal, & R. Felix, American Conflicts Law § 147 (4th ed. 1986). The same is true of standard codifications. See Uniform Commercial Code § 1–105(1) (1978); Restatement (Second) of Conflict of Laws § 187 (1971). Indeed the Restatement of Conflicts notes expressly that it does not deal with "the ever-present problem of determining the respective spheres of authority of the law and courts of the nation and of the member States." *Id.*, § 2, Comment *c*. Decisions of this Court fully bear out the impression that choice-of-law clauses do not speak to any state-federal issue. On at least two occasions we have been called upon to determine the applicability *vel non* of the FAA to contracts containing choice-of-law clauses similar to that at issue here. Despite adverting to the choice-of-law clauses in other contexts in our opinions, we ascribed no significance whatever to them in connection with the applicability of the FAA. *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506 (1974); *Bernhardt* v. *Polygraphic Co.*, 350 U. S. 198 (1956).[9] The great weight of lower court authority similarly rejects the notion that a choice-of-law clause renders the FAA inapplicable.[10]

---

[9] In *Scherk*, the contract contained the following clause: "The laws of the State of Illinois, U. S. A. shall apply to and govern this agreement, its interpretation and performance." 417 U. S., at 509, n. 1. Despite discussing the effect of that clause in a different context, *id.*, at 519, n. 13, we did not consider the possibility that the FAA might not apply because of the parties' choice of the law of Illinois. Similarly, in *Bernhardt* the contract provided for arbitration under New York law. While we recognized a choice-of-law problem as to whether New York or Vermont law was applicable, 350 U. S., at 205, we resolved the question of arbitrability under the FAA without any reference to the choice-of-law clause.

[10] See, *e. g.*, *Huber, Hunt & Nichols, Inc.* v. *Architectural Stone Co.*, 625 F. 2d 22, 25–26, n. 8 (CA5 1980); *Commonwealth Edison Co.* v. *Gulf Oil Corp.*, 541 F. 2d 1263, 1268–1271 (CA7 1976); *Burke County Public Schools Board of Education* v. *The Shaver Partnership*, 303 N. C. 408, 420–424, 279 S. E. 2d 816, 823–825 (1981); *Episcopal Housing Corp.* v. *Federal Ins. Co.*, 269 S. C. 631, 637, n. 1, 239 S. E. 2d 647, 650, n. 1

Choice-of-law clauses simply have never been used for the purpose of dealing with the relationship between state and federal law. There is no basis whatever for believing that the parties in this case intended their choice-of-law clause to do so.

Moreover, the literal language of the contract—"the law of the place"—gives no indication of any intention to apply only state law and exclude other law that would normally be applicable to something taking place at that location. By settled principles of federal supremacy, the law of any place in the United States includes federal law. See *Claflin* v. *Houseman*, 93 U. S. 130, 136 (1876); *Hauenstein* v. *Lynham*, 100 U. S. 483, 490 (1880) ("[T]he Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution"). As the dissenting judge below noted, "under California law, federal law governs matters cognizable in California courts upon which the United States has definitively spoken." App. 82 (opinion

---

(1977); *Tennessee River Pulp & Paper Co.* v. *Eichleay Corp.*, 637 S. W. 2d 853, 857–858 (Tenn. 1982); *Mamlin* v. *Susan Thomas, Inc.*, 490 S. W. 2d 634, 636–637 (Tex. Civ. App. 1973); see also *Liddington* v. *The Energy Group, Inc.*, 192 Cal. App. 3d 1520, 238 Cal. Rptr. 202 (1987) (reversing trial court ruling that had applied § 1281.2(c) rather than the FAA because choice-of-law clause specified contract would be construed under California law). But see *Garden Grove Community Church* v. *Pittsburgh-Des Moines Steel Co.*, 140 Cal. App. 3d 251, 262, 191 Cal. Rptr. 15, 20 (1983); *Standard Co. of New Orleans, Inc.* v. *Elliott Construction Co.*, 363 So. 2d 671, 677 (La. 1978).

Stanford contends that because the *Garden Grove* decision antedated the conclusion of the present contract, it must have informed the language the parties used. Brief for Appellee 31–32; Tr. of Oral Arg. 35. This argument might have greater force if the clause had been one the parties actually negotiated, rather than one they incorporated from an industry-wide form contract. In any case it is impossible to believe that, had they actually intended that a result so foreign to the normal purpose of choice-of-law clauses flow from their agreement, they would have failed to say so explicitly.

of Capaccioli, J.). Thus, "the mere choice of California law is not a selection of California law over federal law . . . ." *Id.*, at 84. In the absence of any evidence to the contrary it must be assumed that this is what the parties meant by "the law of the place where the Project is located."

Indeed, this is precisely what we said when we once previously confronted virtually the same question. In *Fidelity Federal Savings & Loan Assn.* v. *De la Cuesta*, 458 U. S. 141 (1982), a contract provision stated: "This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located." *Id.*, at 148, n. 5. Rejecting the contention that the parties thereby had agreed to be bound solely by local law, we held: "Paragraph 15 provides that the deed is to be governed by the 'law of the jurisdiction' in which the property is located; but the 'law of the jurisdiction' includes federal as well as state law." *Id.*, at 157, n. 12. We should similarly conclude here that the choice-of-law clause was not intended to make federal law inapplicable to this contract.

### III

Most commercial contracts written in this country contain choice-of-law clauses, similar to the one in the Stanford-Volt contract, specifying which State's law is to govern the interpretation of the contract. See Scoles & Hay, Conflict of Laws, at 632–633 ("Party autonomy means that the parties are free to select the law governing their contract, subject. to certain limitations. They will usually do so by means of an express choice-of-law clause in their written contract"). Were every state court to construe such clauses as an expression of the parties' intent to exclude the application of federal law, as has the California Court of Appeal in this case, the result would be to render the Federal Arbitration Act a virtual nullity as to presently existing contracts. I cannot believe that the parties to contracts intend such consequences to flow from their insertion of a standard choice-of-law

clause. Even less can I agree that we are powerless to review decisions of state courts that effectively nullify a vital piece of federal legislation. I respectfully dissent.