## Lytle v. CitiFinancial Services Inc.

C.P. of Delaware County, no. 00-7550.

*Robert M. Firsker,* for plaintiffs.
*Marilyn Heffley,* for defendant.

BRADLEY, *J.,* March 6, 2001—Plaintiffs, Robert E. Lytle and Judith Lytle, appeal from the order sustaining the preliminary objections of defendant, CitiFinancial Services Inc., f/k/a Commercial Credit Plan Consumer Discount Company, and dismissing plaintiffs' complaint with prejudice.

This is a class action. Plaintiffs' complaint alleges claims against CitiFinancial for violation of the federal

Truth-in-Lending Act (Count I); violation of Pennsylvania Act of January 30, 1974 (Act 6) (Count II); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count III); breach of contract (Count IV); unjust enrichment (Count V); and fraud (Count VI).

Plaintiffs' complaint stems from a loan arrangement plaintiffs entered into with CitiFinancial on May 28, 1997. Plaintiffs borrowed the principal amount of $123,661.26. This loan was secured by a mortgage on plaintiffs' residence. Plaintiffs made the installment payments as provided by the loan agreement. On or about August 18, 1998, plaintiffs refinanced and made full prepayment to CitiFinancial. In order to make full payment and to cause the mortgage to be satisfied, CitiFinancial required plaintiffs pay defendant, the total $124,554 comprised of the following charges: principal balance, unearned interest, prepayment penalty, release fee, and unspecified charges.

The complaint avers that defendant's actions in collecting a prepayment penalty and unearned finance charges when a mortgage is satisfied early violate state and federal laws as well as Pennsylvania common law. Plaintiffs filed their complaint as a class action alleging that they represented the class of persons who paid CitiFinancial a prepayment penalty and unearned finance charges when a mortgage loan was paid off early. Defendant filed preliminary objections to plaintiffs' complaint which were sustained. For the reasons that follow, plaintiffs' complaint was dismissed with prejudice.

## ARBITRATION PROVISION

Plaintiffs are precluded from litigating their complaint in this forum because they are bound by an arbitration provision they signed when obtaining the loan (agreement). (See complaint, exhibit A, disclosure statement, note and security, p. 3.)

In bold print and in capital letters, the following is stated: **"READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION."** This is printed at the top and the bottom of the arbitration provision. Both plaintiffs' signatures appear directly after this statement at the bottom. The scope of the arbitration provision is broad and only excludes any action to effect a foreclosure to transfer title to the property being foreclosed or any matter where all parties seek monetary damages in the aggregate of $15,000 or less in total damages, costs and fees. Neither of these exclusions is implicated here. Therefore, plaintiffs are bound by the arbitration provision which mandates that all claims or disputes be submitted to arbitration.

Lending further support for the above conclusion is the fact that the arbitration provision specifically lists plaintiffs' claims as those which are governed by the arbitration agreement. The arbitration provision states:

"Examples of claims that are governed by this agreement include those involving:

" • The Truth-in-Lending Act and Regulation Z;

" • The Equal Credit Opportunity Act and Regulation B;

" • State insurance, usury, and lending laws; fraud or misrepresentation, including claims for failing to disclose material facts;

" • Any other federal or state consumer protection statute or regulation;

" • Any party's execution of this provision and/or willingness to be bound by its terms and provisions; or

" • Any dispute about closing, servicing, collecting, or enforcing a credit transaction."

By its clear and unambiguous terms, the arbitration provision requires plaintiffs to resolve any claim or dispute with CitiFinancial, as defined in the arbitration provision, through binding arbitration. The arbitration provision provides that "any claim . . . shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act; (ii) expedited procedures of the Commercial Arbitration Rules of the American Arbitration Association (administrator); and (iii) this provision, unless both [parties] agree in writing to forego arbitration." Plaintiffs have given no cogent reason why the arbitration provision should not be enforced as they agreed.

Not only does the arbitration provision mandate that plaintiffs' complaint must be submitted to arbitration, but also the application of the Federal Arbitration Act compels the same conclusion. The arbitration provision cites to the FAA as the authority by which claims shall be resolved pursuant to the agreement. In enacting section 2 of the FAA pertaining to the validity, irrevocability and enforcement of agreements to arbitrate, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims that the contracting

parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 853, 79 L.Ed.2d 1 (1984). The FAA, based upon Congress' authority under the Commerce Clause, creates a body of federal substantive law that is applicable in both state and federal courts. *Moses H. Cone Memorial Hospital,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Accordingly, the arbitrability of a dispute is governed by the FAA if the arbitration provision is part of an agreement involving interstate commerce. The court agrees with defendant that this claim is one based on a contract evidencing a transaction involving commerce. Claims arising from a mortgage loan transaction presumptively involve interstate commerce. *Wilson v. Par Builders II, Inc.,* 879 F. Supp. 1187 (M.D. Fla. 1995). Indeed, the special acknowledgments section of the arbitration provision in the instant case states: "(ii) the funding for your credit transaction will come in whole or in part from sources outside this state which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1-9." Here, there can be no dispute that the arbitration provision is part of an agreement involving interstate commerce.

Plaintiffs also argue that the arbitration agreement cannot be enforced because it does not allow for the arbitration of cases on behalf of a class. They argue further that to interpret the arbitration agreement as compelling individuals to arbitrate their claims and prohibiting class actions contravenes public policy and amounts to enforcing a contract of adhesion. For the reasons that follow we find these claims to be completely without merit.

The arbitration agreement at issue specifically excludes class actions. In *Champ v. Siegel Trading Co. Inc.,* 55 F.3d 269 (7th Cir. 1995), the Seventh Circuit held that section 4 of the FAA precludes federal district court judges from ordering class arbitration when the parties' arbitration agreement is silent on the issue. The court held that "[a]bsent an express provision in the parties' arbitration agreement providing for class arbitration, Fed.R.C.P. 81(a)(3) does not provide a district court with the authority to reform the parties' agreement and order the arbitration panel to hear these claims on a class basis pursuant to Rule 23." Although the federal rules do not apply to the instant matter (arguably neither does section 4 of the FAA, see discussion *infra*), the reasoning in *Champ* is sound and leads to the inescapable conclusion that absent an express provision allowing class arbitration, the parties are free to contract away their right to pursue a class action. That is exactly what occurred here, the parties consented to the prohibition on class arbitration.

Additional support can be found in the recent case of *Johnson v. West Suburban Bank,* 225 F.3d 366 (C.A. 3 2000), *cert. denied sub. nom.,* 121 S.Ct. 1081, 2001 WL 137649, 69 U.S.L.W. 3383 (U.S. Feb. 20, 2001) (no. 00-846). In that case, the Third Circuit held that an arbitration agreement which precluded plaintiffs from bringing Truth-in-Lending Act and Electronic Fund Transfer Act claims on behalf of a class was enforceable. If an arbitration provision precluding a class action is otherwise valid, *i.e.,* has been consented to by plaintiff, plaintiff has no legal right to insist upon bringing his or her claim as part of a class. *Id.*

Furthermore, although plaintiffs have alleged that the arbitration agreement is a contract of adhesion, they have not directed the court to any facts supporting this claim. There is simply no reason to disregard the clear, unambiguous terms of the arbitration agreement which was consented to by both parties.

## CLASS ACTION

Not only are plaintiffs prohibited from bringing their claims as a class action pursuant to the arbitration agreement, they are also prohibited from doing so pursuant to Act 6. Act 6, as this Commonwealth's usury statute is commonly referred to, is codified at 41 P.S. §101-605. Section 504 limits the nature of the action available:

"*Section 504. Individual actions permitted*

"Any person affected by a violation of the Act shall have the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation together with costs including reasonable attorney's fees and such other relief which such person may be entitled under law."

As is readily apparent, the plain language of section 504 unambiguously limits any Act 6 cause of action to individual plaintiffs. The rules of statutory construction mandate that when the language of a statute is clear and free from all ambiguity, "[t]he letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b).

Moreover, a review of the legislative history of Act 6 reveals that the Pennsylvania Senate explicitly decided not to permit class actions by striking language from the original draft of section 504 which provided for re-

covery by a class of persons. See Senate Bill no. 1255, printer's no. 1508 (October 29, 1973) pp. 12-13, and cf., Senate Bill no. 1255, printer's no. 1610 (November 27, 1973) pp. 14-15. It is clear that the unambiguous language of Act 6 and its accompanying legislative history show that class actions are simply not permitted.

A further reason that plaintiffs' allegation of an Act 6 violation must be dismissed is that the Act's prohibition on prepayment penalties and limitation on interest rates do not apply to the mortgage in question. Act 6 is limited to "residential mortgages," that is, it applies, by its terms, to only those mortgages for $50,000 or less. 41 P.S. §101. There is no question that the mortgage in question is not a "residential mortgage" as defined by Act 6 because its amount is $123,661.26. See complaint paragraph 15, exhibit "A." Because the mortgage is not a "residential mortgage" as defined by Act 6, the limitation on interest rates, and prohibition of prepayment penalties do not apply to this transaction.

## DISMISSAL OF THE COMPLAINT

Plaintiffs also argue that dismissal of their claims was contrary to the clear terms of section 3 of the FAA. Plaintiffs' assertion assumes sections 3 and 4 of the FAA are applicable to state court proceedings. This assumption may be unfounded given the language in *Southland Corp. v. Keating, supra,* 466 U.S. at p. 16, n.10, 104 S.Ct. 852 where the court stated: "in holding that the Arbitration Act pre-empts a state law that withdraws the power to enforce arbitration agreements, we do not hold that sections 3 and 4 of the Arbitration Act

apply to proceedings in state courts." See also, *Volt Info. Sciences v. Leland Stanford Jr. U.,* 489 U.S. 468, 477, 109 S.Ct. 248, 103 L.Ed.2d 488 (1989). Although the United States Supreme Court has reserved the question whether sections 3 and 4 of the FAA apply to state court proceedings, we believe they have indicated that these two sections apply only to federal courts and not to state court proceedings. Assuming, however, the applicability of sections 3 and 4 to state court proceedings, it was still proper under the circumstances to dismiss and not stay this matter. Section 3 provides that when claims are properly referable to arbitration that upon application of one of the parties, a court shall stay the trial of the action pending completion of the arbitration. 9 U.S.C. §3. Although this stay is mandatory, it is equally clear that section 3 was not intended to limit dismissal of a case under the proper circumstances. "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992).

As discussed previously, all issues raised in this action are arbitrable and must be submitted to arbitration. Therefore, retaining jurisdiction and staying the action will serve no useful purpose as any post-arbitration remedies sought by the litigants would be limited to a judicial review of the arbitrator's award in the limited manner prescribed by law. See 9 U.S.C. §§9-12. Also, we note parenthetically, that aside from a brief mention in their answer to defendant's preliminary objections, plaintiffs have not formally moved for a stay of this court action.

It is for all the above reasons that defendant's preliminary objections were sustained and plaintiffs' complaint dismissed.