FELMAN PRODUCTION INC.,
et al., Plaintiffs,

v.

Boris BANNAI, et al., Defendants.

Civil Action No. 3:06–0644.

United States District Court,
S.D. West Virginia,
Huntington Division.

March 5, 2007.

Alisa Shver, Bruce S. Marks, Gene M.
Burd, Thomas Sullivan, Marks & Sokolov,

Philadelphia, PA, Courtney Anne Kirtley, Edward D. McDevitt, Julia A. Chincheck, Bowles Rice McDavid Graff & Love, Charleston, WV, for Plaintiffs.

David Lerner, George M. Head, Matthew J. Boettcher, Michael D. Almassian, Thomas P. Vincent, Plunkett & Cooney, Bloomfield Hills, MI, Mark A. Ferguson, Sprouse & Ferguson, Charleston, WV, John P. Lacher, Robert O. Lampl, Pittsburgh, PA, for Defendants.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

Pending before the Court is Defendants' Motion to Compel Arbitration and Stay Claims. The Court **DENIES** the Motion. Also, Plaintiffs sought leave to file a surreply to Defendants' Reply. The Court **GRANTS** Plaintiffs' Motion and has reviewed Plaintiffs' Surreply in making the determination on the issue of what law applies in this controversy.

### Background

The case before the Court relates to a series of (international and national) agreements between Plaintiffs and Bannai, acting as a principal on behalf of several companies. The Motion relates only to one agreement between Plaintiff Bonham Business Corp. ("Bonham") and Northgate Distribution Services Limited ("Northgate"). The agreement was executed by Mr. Neofytos Savvidis for Bonham and by Mr. Bannai for Northgate, acting as a principal for Northgate. The Northgate Ore Agreement (also referred to as the "West Virginia Ore Agreement") provides for the sale of ore by Northgate to Bonham. The Agreement includes an arbitration clause, requiring the arbitration of all claims relating to the Agreement in London. There is also a choice of law provision in the clause dictating English law will be applied in arbitration. Bonham sued Bannai for fraud and unjust enrichment based on the Northgate Ore Agreement. Northgate is not a defendant in this action.

Bannai moves the Court to compel arbitration under this agreement for counts III for fraud and IV for unjust enrichment in the Complaint. Bonham objects to arbitration on two grounds. First, Bonham states that Bannai was not a party to the Agreement and, as a non-signatory, lacks standing to compel arbitration. Second, even if the Court finds Bannai has standing, the arbitration clause does not cover fraud and unjust enrichment claims. Bonham urges the Court to apply English law, which does not recognize the rights of non-signatories to compel arbitration and applies arbitration clauses narrowly and would not include claims under counts III and IV.

### Discussion

#### A. Choice of Law:

The first issue to address is the choice of law provision in resolving both challenges by Bonham. Defendants argue federal law applies to the issue of standing, and Plaintiffs argue English law applies as per the choice of law provision. Since the laws allow completely opposite determinations of the issues, the choice of law ruling becomes dispositive as to whether Bannai has standing and whether the arbitration clause covers the claims in counts III and IV of the Complaint. If United States federal law applies, Bannai has standing and the claims would be arbitrable; if English law applies he does not have standing and the arbitration clause would not apply to the disputes in the complaint.

The parties to the Northgate Ore Agreement determined that English law would apply to any arbitration. The Federal Arbitration Act ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("The Convention") do not preempt the agree-

ment of the parties to have English law govern the arbitration. In fact, the policy of favoring arbitration under the FAA is not meant to favor "arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The parties in this agreement chose English law to govern and the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis.*, 489 U.S. at 478, 109 S.Ct. 1248. The decision to enforce a choice of law provision should not be dependant on an outcome determinative review; the law chosen will be used, "even if the result is that arbitration is stayed where the [FAA] would otherwise permit it to go forward." *Volt Info. Scis.*, 489 U.S. at 479, 109 S.Ct. 1248. The international basis of this contract does not hinder the Court from using the choice of law provision. The complexities of international agreements and uncertainties about what law will apply encourages the parties to decide the terms in advance. The courts must abide by the determinations of the parties as to location and application of law:

> An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute. The invalidation of such an agreement in the case before us would not only allow the respondent to repudiate its solemn promise but would, as well, reflect a "parochial concept that all disputes must be resolved under our laws and in our courts.... We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts."

*Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The arbitration agreement must be interpreted using English law.

## B. Bannai's Standing as Non–Signatory:

■ The Court must address whether Bannai has standing to compel Bonham to arbitrate. Plaintiffs cite a case that has a similar fact pattern to the current case. The Second Circuit applied Swiss law to an arbitration clause under a choice of law provision, when the Court determined that a non-signatory to an agreement could not compel arbitration under Swiss law. *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 51 (2d Cir.2004).

Foreign law can be used by the Court, when a party

> give[s] notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

*Fed.R.Civ.P.* 44.1. Plaintiffs bear the "burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case." *Bel–Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 440–41 (3d Cir.1999). Plaintiffs submitted an expert declaration by Philip Riches and Roger Kennell ("Expert Declaration"), barristers in the United Kingdom, on the application of English law in determining whether Bannai can compel arbitration and whether the claims are subject to arbitration in England.

The Expert Declaration states that English law would not allow a non-signatory to compel arbitration. Since Defendants relied solely on the argument that Federal

law applies, they have not submitted any memoranda to argue Plaintiffs' interpretation of law is incorrect.

English arbitration law is governed by the Arbitration Act 1996. Plaintiffs' experts state that it is a general principle of arbitration law that the agreement only binds the parties to the agreement to arbitration. (Expert Decl. ¶ 14). Plaintiffs' experts cite *Mercantile & General Reinsurance Co. Plc v. London Assurance* (3rd November 1989) (unreported) as a rare case brought by a non-signatory. (Expert Decl. ¶ 15, Ex. C). That court does not discuss the issues in detail although it appears clear only parties to the agreement are liable under the agreement.

There are three exceptions to the general English principle that only signatories to the agreement have standing to force arbitration: agency, section 82(c) of the Arbitration Act 1996 and The Contract (Rights of Third Parties) Act 1999. (Expert Decl. ¶ 17). Bannai did not assert any of the exceptions, and after reviewing the Expert Declaration it is clear the exceptions would not apply in this case.[1]

Under English law Bannai lacks standing to compel arbitration.

### C. Arbitration Agreement's Coverage of Claims:

■ Although, the Court need not consider whether counts III and IV of the Complaint would be arbitrable in English law since Bannai lacks standing, a review of the Expert Declaration provides evidence that English law would read this arbitration clause narrowly. The clause provides that should "any differences or questions ... arise between the parties as to the construction, meaning or effect of this agreement, or as to the rights, obligations or liabilities of either party hereunder" then such questions will be arbitrated. (Def.Mot., Ex. 1). There are two sets of claims that can be considered under the arbitration clause: first, claims relating to the "construction, meaning or effect of [the] agreement," and second, claims relating to the parties' "rights, obligations or liabilities hereunder."

Under English law the Court should review the wording of the arbitration clause and whether there is a sufficient connection between the claims and agreement containing the arbitration clause. (Expert Decl. ¶¶ 47–48). When the arbitration clause is broadly written, as applying to all claims "in connection with" the contract, the English Courts have extended the clause to include misrepresentation or negligent misrepresentation claims. (Expert Decl. ¶¶ 48–49). The language in the arbitration clause before the Court is not broad. Instead, it details specifically what claims it covers and does not appear to have the broad language.

---

1. The agency exception does not apply since there is no evidence that Northgate was acting as Bannai's agent and contracting on behalf of Bannai. (Expert Decl. ¶ 19). Section 82(c) exception refers to a party in the agreement as "any person claiming under or through a party to the agreement." (Expert Decl. ¶ 21, Ex. E). In *Letton v. Harris* (5th March 2001) (unreported), Letton was the "controlling mind" who executed the agreement on behalf of a company and that court did not allow him to be compelled to arbitrate as a party under section 82(c)'s language since "he and the company have separate legal personalities." (Expert Decl. ¶¶ 22–25, Ex. F). The final exception is one found under The Contract (Rights of Third Parties) Act 1999 that allows a third party to enforce a contact, with an arbitration clause. The third party is given this right, if the contract "expressly provides" for enforcement by a third party or the terms of the contract "purport[ ] to confer a benefit on him." The Northgate Agreement does not provide expressly for the enforcement by a third party, nor does it confer a benefit on a third party. (Expert Decl. ¶¶ 40–44).

The first set of claims that the clause could apply to, relate to the "construction, meaning or effect" of the Agreement such as to contractual claims. The Expert Declaration does indicate that the clause could apply to a misrepresentation claim under count III, if the Agreement could be rescinded. (Expert Decl. ¶¶ 49–50). If the Agreement could be rescinded, the "effect" of the Agreement might be at issue in the alleged misrepresentation by Bannai. Since the claim seeks damages and not a rescission of the Agreement, the claims would not be covered. (Expert Decl. ¶ 50). Also, count IV, the claim of unjust enrichment, would not be covered under this section of the arbitration clause.

■ The second set of claims that the clause could apply to relates to the parties' "rights, obligations or liabilities hereunder." Plaintiffs' experts indicate there is not case law on how narrowly or broadly the English Courts would extend "hereunder" and they interpret it to be equivalent to "under the agreement" as opposed to "out of the agreement." (Expert Decl. ¶¶ 53–54). *Black's Law Dictionary* defines "hereunder" as "[l]ater in this document" and "[i]n accordance with this document." *Black's Law Dictionary* (8th ed.2004). Plaintiffs' experts' determination of the equivalent term appears appropriate. In English law "[i]t is generally accepted that clauses which refer to disputes arising 'under' the contract refer only to those disputes which may arise regarding the rights and obligations created by the contract itself, rather than a wider class of disputes." (Expert Decl. ¶ 54) (citing *Ashville Investment v. Elmer Contractor Ltd.* [1989] Q.B. 488). Plaintiffs' experts further discuss that the intentions of the parties could not have been for the arbitration clause to cover claims against Bannai specifically when a parallel claim was not filed against Northgate. (Expert Decl. ¶¶ 59–62). Although there is room for interpreting the clause broadly, the Court sees the clause as drafted narrowly to apply in specific situations more grounded in contract law and relating only to specific parties to the Northgate Ore Agreement. It is not at all clear that a claim of fraud against Bannai was ever contemplated as being covered in the arbitration agreement.

The arbitration clause, under the choice of law provision, does not extend to claims by Bonham against Bannai under the Northgate Ore Agreement.

### *Conclusion*

For the aforementioned reasons Defendants' Motion to Compel Arbitration and Stay Claims is **DENIED.** Plaintiffs' Motion for Leave to File Surreply is **GRANTED.** The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.