GOFF GROUP, INC., Plaintiff,

v.

GREENWICH INSURANCE COMPA-
NY and XL Specialty Insurance
Company, Defendants.

No. CIV.A. 02–T–954–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 30, 2002.

Thomas T. Gallion, III, Jamie A. Johnston, Haskell Slaughter Young & Gallion LLC, Montgomery, AL, for Goff Group, Inc., plaintiff.

G. Thomas Yearout, Duell, Yearout & Spina, Birmingham, AL, for Greenwich Insurance Company, XL Specialty Insurance Company, defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

In this case, plaintiff Goff Group, Inc., has brought suit against defendants Greenwich Insurance Company and XL Specialty Insurance Company, alleging breach of contract, outrage, and tortious interference with business relations and seeking injunctive and monetary relief. Goff originally brought this lawsuit in state court, but Greenwich and XL removed it to this federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441(a). This case is now before the court on Greenwich and XL's motion to dismiss and alternative motion to compel arbitration and stay proceedings. For the following reasons, the court will grant Greenwich and XL's motions to the extent that it will compel the parties to arbitrate their disputes.

### I.

The applicable facts underlying Goff's lawsuit are essentially undisputed and straightforward. Goff and Greenwich entered into a program manager's agreement that allowed Goff, starting January 1, 2000, to solicit and bind insurance policies on behalf of Greenwich. Later that year, on

March 15, XL was added to this agreement so that Goff could solicit and bind policies on XL's behalf as well.

The conflict leading to this lawsuit began in June 2002. On June 13, XL (apparently on behalf of both itself and Greenwich) sent a letter to Goff suspending Goff's authority to quote new and renewal business due to unpaid premiums. XL's stated basis for this suspension was that Goff was three months behind on its payments. In its letter, XL wrote that Goff was late on its March and April payments, and would be late on its May payment as well if that payment was not made by June 15. XL also warned Goff that, because of the unpaid premiums, it had the right to terminate its agreement with Goff in 30 days. On June 28, XL sent a second letter to Goff stating that it was terminating its agreement with Goff effective September 30, and that it was continuing its suspension of Goff's authority to quote new and renewal business until that date. On August 7, XL sent a third letter to Goff demanding, pursuant to the terms of the program manager's agreement, arbitration of certain issues in connection with the termination of that agreement.

In response to XL's actions, Goff filed a lawsuit in the Circuit Court of Montgomery County, Alabama on August 8, requesting a temporary restraining order and other injunctive relief against Greenwich and XL. The next day, the state court issued an *ex parte* temporary restraining order allowing, among other things, Goff to continue to quote new and renewal business for Greenwich and XL and enjoining Greenwich and XL from suspending Goff's underwriting authority. Then, on August 19, Greenwich and XL removed the case to this court, and, on that same day, filed the motions now before the court

## II. DISCUSSION

### A.

In their motions, Greenwich and XL seek, among other things, an order under § 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 1–16, compelling Goff to adjudicate all of its asserted claims in binding arbitration proceedings. Greenwich and XL argue that the arbitration provision in the program manager's agreement between themselves and Goff requires this court to stay these proceedings and compel the parties to arbitration. In pertinent part, the arbitration provision reads that, "As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement, including its formation, validity or applicability to the dispute, during or after termination of this Agreement, shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire meeting in Philadelphia unless otherwise mutually agreed." Greenwich and XL also point to the arbitration-demand letter, sent to Goff on August 7, as having provided the arbitration notice required by the program manager's agreement.

In response, Goff argues that a conflicting contract provision makes the arbitration provision inapplicable. Goff points to an exhibit to the program manager's agreement. That exhibit contains a choice-of-law provision providing that the agreement "shall be governed by and interpreted in accordance with the laws of the State of Pennsylvania applicable to contracts made and to be performed entirely within Pennsylvania."[1] Goff first

---

1. The choice-of-law provision provides in full that:

   "This Agreement shall be governed by and interpreted in accordance with the laws of the State of Pennsylvania applicable to contracts made and to be performed entirely within Pennsylvania.... Any and all disputes arising out of or in connection with this Agreement shall be resolved in the appropriate Federal or State court located in

argues that this provision is irreconcilable with the arbitration provision and therefore that both provisions are inapplicable, or that these conflicting provisions make the contract ambiguous and that parol evidence proves the arbitration clause should not control. Goff also argues, in the alternative, that by filing their notice of removal and other motions with this court, Greenwich and XL have waived their right to compel arbitration.

### B.

The FAA applies to contracts "evidencing a transaction involving commerce." 9 U.S.C.A. § 2. The parties do not appear to dispute that this contract, that is, the program manager's agreement, involves interstate commerce.[2] Thus, it is clear that the FAA applies to this contract.

■■■■ However, the court's inquiry does end merely because the court has concluded that the FAA applies. The FAA "was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989) (quotation marks omitted). The FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). State law is "pre-empted to the extent that it actually conflicts with federal law" or "undermine[s] the goals and policies of the FAA," *Volt*, 489 U.S. at 477, 109 S.Ct. at 1255, and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses. H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941–942.

■■■■ However, "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Thus, the FAA does not "prevent[ ] the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms." *Volt*, 489 U.S. at 479, 109 S.Ct. at 1256. "Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, . . . so too may they specify by contract the rules under which that arbitration will be conducted." *Id.*

With these principles in mind (in particular, that the FAA preempts state laws hostile to arbitration and that due regard must be given to the federal policy favoring arbitration), the Supreme Court in *Volt*

---

the State of Pennsylvania. Nothing in this clause constitutes or should be understood to constitute a waiver of each party's right to remove an action to a United States District Court."

2. Goff is incorporated in and has its principal place of business in Alabama; Greenwich is incorporated in California with its principal

place of business in Connecticut; and XL is incorporated in Illinois with its principal place of business in Connecticut. The controversy involves insurance products, underwritten by Greenwich and XL, and sold by Goff in Alabama, Arkansas, Georgia, Kentucky, Mississippi, North Carolina, South Carolina and Tennessee.

applied state law in construing an arbitration provision in a contract covered by the FAA. There, the California Court of Appeal had construed a contractual provision to mean that the parties intended the California rules of arbitration, rather than the FAA's rules, to govern the resolution of their dispute. Because the California rules were "manifestly designed to encourage resort to the arbitral process," *Volt*, 489 U.S. at 476, 109 S.Ct. at 1254, and because they "generally foster[ed] the federal policy favoring arbitration," *id.* at 476 n.5, 109 S.Ct. at 1254 n.5, the Court "concluded that such an interpretation was entirely consistent with the federal policy 'to ensure the enforceability, according to their terms, of private agreements to arbitrate,'" *Mastrobuono*, 514 U.S. at 57, 115 S.Ct. at 1216 (quoting *Volt*, 489 U.S. at 476, 109 S.Ct. at 1254).

Later, in *Mastrobuono*, the Supreme Court revisited the relationship between the FAA and state law. There, the parties had entered into a standard-form client's agreement containing a provision stating that the "laws of the state of New York" would apply. *Mastrobuono*, 514 U.S. at 53, 115 S.Ct. at 1214. The agreement also contained a provision stating that disputes would be resolved through arbitration under the rules of the National Association of Securities Dealers. *Id.* at 60–61, 115 S.Ct. at 1218. While the Securities Dealers' rules allow arbitrators to award punitive damages, New York law does not. *Id.* at 55, 61, 115 S.Ct. at 1214, 1218. The Supreme Court held that the agreement did not preclude an award of punitive damages. However, unlike in *Volt*, the Court did not have a state-court decision on point, but rather, relying on the state law chosen in the choice-of-law provision in the contract between the parties (New York law) and the state law where the trial court sat (Illinois law), the Court had to make an educated case as to how the highest state court of the State whose laws were at issue would resolve the dispute.

■ This court concludes that this case is essentially on all fours with *Mastrobuono*. As was true there, this court does not have a Pennsylvania case on point, but rather has to make an educated case as to how that State's highest court would resolve the dispute. This court, presented with no credible reasons to the contrary, therefore concludes that the Pennsylvania Supreme Court, constrained by the FAA principles articulated above, would essentially reach the same result as the United States Supreme Court did in *Mastrobuono*.

First, there is no reason to conclude that what the Supreme Court said in *Mastrobuono* about New York law would not apply with equal force to Pennsylvania law. The *Mastrobuono* Court observed: "The choice-of-law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship. Thus, if a similar contract, without a choice-of-law provision, had been signed in New York and was to be performed in New York, presumably 'the laws of the State of New York' would apply, even though the contract did not expressly so state. In such event, there would be nothing in the contract that could possibly constitute evidence of an intent to exclude punitive damages claims." 514 U.S. at 59, 115 S.Ct. at 1217.

Modifying this comment to apply to Pennsylvania law, this court concludes as to the program manager's agreement Goff has with Greenwich and XL: The choice-of-law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the con-

tractual relationship. Thus, if a similar contract, without a choice-of-law provision, had been signed in Pennsylvania and was to be performed in Pennsylvania, presumably the laws of the State of Pennsylvania would apply, even though the contract did not expressly so state. In such event, there would be nothing in the contract that could possibly constitute evidence of an intent to exclude arbitration as provided for elsewhere in the contract.

Second, Pennsylvania law supports *Mastrobuono*'s reading of New York and Illinois law to follow the "cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono,* 514 U.S. at 63, 115 S.Ct. at 1219; *see also Flatley v. Penman,* 429 Pa.Super. 517, 632 A.2d 1342, 1344 (Pa.Super.Ct.1993) (a contract "is best read as a whole, wherein clauses seemingly in conflict are construed, if possible, as consistent with one another"); *id.* ("terms in one section of the contract should not be interpreted in a manner which nullifies other terms"). The best way to harmonize the choice-of-law provision with the arbitration provision in the program manager's agreement is to read "the laws of the State of Pennsylvania" to encompass substantive principles that Pennsylvania courts would apply, but not to include a broad prohibition on arbitration altogether; indeed, Pennsylvania law fully and unequivocally supports contractual arbitration. *See, e.g.,* 42 Pa. Cons.Stat. § 7303 (a written agreement to arbitrate is valid and enforceable save upon the grounds that exist at law and in equity

relating to the validity, enforceability, or revocation of any contract). "Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither provision intrudes upon the other." *Id.* In contrast, Goff's reading sets up the two provisions in conflict with one another: one foreclosing arbitration, the other allowing it. "This interpretation is untenable." *Id.*

Finally, and as the *Mastrobuono* Court observed, perhaps most persuasively, "At most, the choice-of-law clause introduces an ambiguity into an arbitration agreement." *Mastrobuono,* 514 U.S. at 62, 115 S.Ct. at 1218. "As w[as] pointed out in *Volt,* when a court interprets such provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Id.* (quoting *Volt* 489 U.S. at 476, 109 S.Ct. at 1254).[3]

In conclusion, then, the court must reject Goff's argument that the arbitration provision and the choice-of-law provision are in conflict and therefore that neither should apply. The FAA requires federal courts to interpret contracts in favor of arbitration; additionally, Pennsylvania law requires contract clauses to be interpreted consistently with one another. With these rules as guidance, it is clear that the contract at issue should be read as providing for arbitration under the Pennsylvania laws governing arbitration.

---

**3.** For these reasons, the court must also reject Goff's argument that parole evidence shows a clear intent by the parties not to have the arbitration provision apply. Toward this, Goff cites to an affidavit by Goff president John W. Goff as evincing Goff's "intent when executing Exhibit 'C' to the Agreement and his understanding of the contract language."

In this affidavit, however, John Goff simply states that "The third exhibit to the agreement [containing the choice-of-law provision] entailed a handling of the claims." This statement does not show an intent by the parties to do away with an arbitration provision appearing in the same contract and executed at the same time.

### C.

This court was tempted to resolve this case under the "FAA default rule" formulated in *Roadway Package System, Inc. v. Kayser*, 257 F.3d 287 (3d Cir.2001), but, after careful consideration, declines to do, even though the result would be the same. In *Kayser*, the Third Circuit Court of Appeals established a default rule of *federal* law that "a generic choice-of-law clause, standing alone, is insufficient to support a finding that the contracting parties intended to opt out of the FAA's default standards." 257 F.3d at 296. Thus, unless the contract "demonstrate[s] a clear intent to displace the FAA's ... standards and replace them with ones borrowed from state law," the FAA's standards apply. This bright-line rule, while attractive in its clarity, is inappropriate as a federal usurpation of the law of contract interpretation, traditionally the domain of state law.[4]

In fact, the Supreme Court's decisions in *Volt* and *Mastrobuono*, which *Kayser* purports to interpret, appear to explicitly preclude the creation of such a bright-line federal rule. In *Volt*, as observed previously, the Court found itself bound by a state-court interpretation, noting "that the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review," 459 U.S. at 474, 109 S.Ct. at 1253, and finding that the federal policy with regard to arbitration, as created by the FAA, "is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Id.* at 476, 109 S.Ct. at 1254. The Third

Circuit's federal default rule intrudes too much on the role (albeit an FAA restricted one) of state law in the enforcement of private contracts. In particular, it goes well beyond the two principal FAA restrictions the Supreme Court has articulated: The FAA preempts state laws hostile to arbitration and, in line with that first principle, due regard must be given to the federal policy favoring arbitration, with ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration. Surely, if varying state-law contract-interpretation principles, whatever they may be, reasonably apply to the arbitration issue presented, and if, as the Supreme Court found in *Volt*, they "foster the federal policy favoring arbitration," *Volt*, 489 U.S. at 476 n.5, 109 S.Ct. at 1254 n.5, there is no reason to resort to some indiscriminate federal default rule over these state-law principles.

The Supreme Court's decision in *Mastrobuono* suggests nothing to contrary. In *Mastrobuono*, the Court again addressed a contract with both an arbitration provision and a choice-of-law clause. 514 U.S. at 54, 115 S.Ct. at 1214. As stated, that contract, however, was never interpreted by any state court; rather, it came to the Supreme Court through the federal court system. *Id.* at 53, 115 S.Ct. at 1214. As such, the Supreme Court was not bound by a state court's interpretation of its own arbitration law, but instead, looking at state law as constricted by the FAA, made its own educated guess as to how the State's highest court would interpret the

---

4. To be sure, in *Lanier v. Old Republic Insurance Co.*, 936 F.Supp. 839, 844 (M.D.Ala. 1996) (Thompson, J.), this court commented that the difference between *Volt* and *Mastrobuono*, "while there, is difficult to grasp." However, on further reflection, the court now believes that this difficulty arose out reading *Volt* and *Mastrobuono* too broadly; that is, reading *Volt* to hold that under the FAA the choice-of-law clause trumps the arbitration

provision, and reading *Mastrobuono* to hold that under the FAA the arbitration provision trumps the choice-of-law clause. The cases do not stand for these broad holdings. Instead, as stated, they merely reflect the Supreme Court's application FAA and state law to two different situations, where the guiding state law is more clear in one than in another and where the specific legal questions differ as well.

contract. *See id.* at 60, 115 S.Ct. at 1217 (looking at a New York court's interpretation of New York arbitration law); *id.* at 62–63, 115 S.Ct. at 1219 (looking to Illinois and New York rules of contractual interpretation); *id.* at 63, 115 S.Ct. at 1219 (same). By finding that the arbitration provision did not include special New York rules limiting the authority of an arbitrator, the Court did not find a new federal policy with regard to how arbitration provisions should be read; rather, the import of its decision was simply to find that "the [federal] Court of Appeals misinterpreted the parties' agreement." *Id.* at 64, 115 S.Ct. at 1219; *see also id.* at 71–72, 115 S.Ct. at 1223 (Thomas, J., dissenting) ("This case amounts to nothing more than a federal court applying Illinois and New York contract law to an agreement between parties in Illinois. Much like a federal court applying a state rule of decision to a case when sitting in diversity, the majority's interpretation of the contract represents only the understanding of a single federal court regarding the requirements imposed by state law.") [5].

To be sure, bright lines are easier to apply than murky ones. But, as any first-year law student learns in his or her first contracts course, state contracts law has been and remains murky, and that state of the law has been and continues to be what makes it both interesting and formidable. But, in the absence of any compelling federal interest, it should be left up to the States to set up any contractual law bright lines.

### D.

▋ Having found that Goff's claims are subject to arbitration, the court must next address whether Greenwich and XL waived their right to that arbitration.

Whether a party has waived its right to arbitration is a question of federal law. *See S & H Contractors, Inc. v. A.J. Taft Coal Co.,* 906 F.2d 1507, 1514 (11th Cir. 1990) (citations omitted). A party may waive its arbitration right by substantially invoking the litigation machinery prior to demanding arbitration; the test in this circuit is whether "under the totality of the circumstances, the ... party has acted inconsistently with the arbitration right, and, in so acting, has in some way prejudiced the other party." *Id.* (citations omitted). In evaluating the totality of the circumstances, the court should give weight to the delay in demanding arbitration, the expense incurred by the moving party as a result of appearing before a judicial tribunal, the relative hardships, and the motives of the parties. *Id.*

▋ In this case, Goff has failed to meet its burden of showing waiver by Greenwich and XL. Here, Goff is the party who first filed a lawsuit, doing so after XL sent its notice requesting arbitration. Goff, in fact, proceeded with that lawsuit in state court *ex parte.* Greenwich and XL's first actions upon becoming aware of the lawsuit were to remove it to federal court and to move to compel arbitration and for other relied, with the motions filed the same day. Goff's only support for why these actions constitute waiver is an Alabama Supreme Court case, *Companion Life Insurance Co. v. Whitesell Manufacturing, Inc.,* 670 So.2d 897 (Ala.1995), holding that a party waived its right to arbitration by removing a case to federal court and invoking the arbitration clause five months later, only after an adverse ruling in district court. 670 So.2d at 899. Besides being materially distinguishable from the case at hand, *Companion Life* is not

---

**5.** While the *Mastrobuono* majority expressly disagreed with Justice Thomas's reasoning on the merits, 514 U.S. at 60 n.4, 115 S.Ct. at 1217 n.4, it did not take issue this state-rule-of-decision comment in his dissent.

controlling here, as waiver is a question of federal, not state, law. *See S & H Contractors*, 906 F.2d at 1514. As such, this court refuses to find that removal of a case to federal court, standing alone, constitutes waiver of a party's right to compel arbitration.

▮ Additionally, Goff argues that Greenwich and XL have substantially invoked the litigation process by filing a motion to dissolve the state court's temporary restraining order,[6] a motion for security,[7] a motion for contempt and an alternative motion for sanctions,[8] and a motion for emergency or expedited hearing.[9] This argument is without merit. First, and most important, these are all preliminary motions, none of which substantially invoke the litigation process by involving discovery or hearings. Second, many of these motions deal with the *ex parte* temporary injunction issued by the state court against Greenwich and XL, who were unable to challenge the issuance of that injunction in state court because they did not receive notice to appear before that court.

Finally, even if all of Greenwich and XL's motions taken together were found to invoke substantially the litigation process, Goff has not shown prejudice arising from these motions. First, it was Goff who filed the original lawsuit in state court; in no way should Goff be prejudiced by that same suit being removed to federal court. Second, Goff was not forced to spend time to supply written responses to Greenwich and XL's other motions. Before Goff filed any written responses to these motions, the court, after speaking with the parties, denied Greenwich and XL's motion to dissolve, motion for security, and motion for

emergency hearing as moot, and denied the motion for contempt without prejudice.[10] As such, Goff has failed to show how it was prejudiced by Greenwich and XL's actions. Because Goff can show neither that Greenwich and XL have substantially invoked the litigation process, nor that it has been prejudiced by Greenwich and XL's actions, Goff has failed to meet its burden of proving waiver by Greenwich and XL.

An appropriate judgment will be entered

### JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court that the motion to dismiss and alternative motion to compel arbitration and stay proceedings, filed by defendants Greenwich Insurance Company and XL Specialty Insurance Company on August 19, 2002 (doc. no. 3), are granted to the extent that plaintiff Goff Group, Inc. is compelled to arbitrate the claims presented in this lawsuit.

The clerk of the court is DIRECTED to close this file administratively.

---

6. Filed August 19, 2002 (Doc. no. 2).

7. Filed August 22, 2002 (Doc. no. 5).

8. Filed August 22, 2002 (Doc. no. 6).

9. Filed August 22, 2002 (Doc. no. 7).

10. *See* order, entered September 9, 2002 (Doc. no. 8).