Filed 5/14/25 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MONE YVETTE SANDERS,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>EDWARD D. JONES & CO, L.P.,<br><br>Real Party in Interest. | B340707<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV31165)<br><br>ORDER MODIFYING OPINION<br><br>(NO CHANGE IN THE APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on May 6, 2025 is modified as follows:

On pages 30-31, in the second sentence of the disposition of this opinion, the words "on remand" should be deleted, and in the last sentence, the words "on appeal" should be replaced with "in this proceeding," so the disposition reads:

> The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order denying Sanders's motion to withdraw from arbitration under section 1281.98, subdivision (b)(1), and allowing Sanders to pursue her claims in court. The trial court should conduct further proceedings consistent with this opinion on Sanders's motion for sanctions under section 1281.99, subdivision (a). Sanders shall recover her costs in this proceeding.
>
> There is no change in the appellate judgment.

---

MARTINEZ, P.J.        FEUER, J.        STONE, J.

2

Filed 5/6/25 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MONE YVETTE SANDERS,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>EDWARD D. JONES & CO, L.P.,<br><br>Real Party in Interest. | B340707<br><br>(Los Angeles County Super. Ct. No. 21STCV31165) |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  William F. Highberger, Judge.  Petition granted.

Moon Law Group, Kane Moon, S. Phillip Song and Stanley J. Park for Petitioner.

No appearance for Respondent.

Venable, John S. Worden and Rudolph G. Klapper for Real Party in Interest.

———————————————

Mone Yvette Sanders filed a putative class and representative action against her former employer, Edward D. Jones & Co., L.P. (Edward Jones), alleging wage and hour claims under the Labor Code as well as a cause of action under the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.).  Pursuant to the parties' arbitration agreement, the trial court granted Edward Jones's motions to compel arbitration of Sanders's individual Labor Code and PAGA claims and stayed the representative PAGA cause of action pending completion of the arbitration.

Sanders initiated the arbitration, and the arbitrator set an arbitration hearing date, but Edward Jones failed to pay $54,000 in fees and costs billed by the arbitrator within 30 days of the payment-due date as mandated by Code of Civil Procedure section 1281.98, subdivision (a)(1).[1]  Sanders then filed a motion in the trial court under section 1281.98, subdivision (b)(1), to vacate the order compelling arbitration and to proceed in the trial court.  Subdivision (b)(1) provides with respect to an employment or consumer arbitration that upon a failure of the party that

---

[1]   Further undesignated statutory references are to the Code of Civil Procedure.

2

drafted the arbitration agreement (drafting party) to pay the required fees and costs under subdivision (a) within the 30-day deadline, "the employee or consumer may unilaterally elect to do any of the following," including to "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." The court denied the motion, finding section 1281.98 was preempted by the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.).

Sanders filed a petition for writ of mandate, and we issued an order to show cause. We agree with the numerous Courts of Appeal that have concluded section 1281.98 furthers the goal of the FAA to require expeditious arbitration of disputes and, accordingly, the section is not preempted by the FAA. Moreover, contrary to Edward Jones's contention, the California Supreme Court in its recent decision in *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562 (*Quach*) did not expand the scope of FAA preemption to encompass all state arbitration-specific rules, including those that favor arbitration. Rather, the court in *Quach* invalidated a judicially created waiver requirement that a party seeking to avoid arbitration show it was prejudiced. (*Id.* at p. 569.) By contrast, section 1281.98 is a procedural rule contained in the California Arbitration Act (CAA), which the parties implicitly agreed in their arbitration agreement would apply to their arbitration.

We also reject Edward Jones's contention that under the arbitration agreement Sanders was required to submit to the arbitrator the issue whether Edward Jones was in default. The plain language of section 1281.98 vests in the employee or consumer the unilateral right upon the drafting party's failure to

3

timely pay fees to withdraw from the arbitration and proceed in court.

Accordingly, the trial court erred in denying Sanders's motion to vacate the order compelling arbitration. We now grant the petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Sanders's Employment and Filing of a Putative Class and Representative Action for Wage and Hour Violations*

On March 5, 2020 Edward Jones hired Sanders as a non-exempt branch office administrator, and she started working for the company later that month.[2] On August 6, 2020, at the start of the COVID-19 pandemic, Sanders signed a "Work At Home Agreement" that contained an "Arbitration and Class Action Waiver" (arbitration agreement). (Underlining omitted.) According to the arbitration agreement, Sanders agreed that if there were "any disputes as a result of this temporary arrangement to work from home, you and Edward Jones agree to submit to mandatory binding arbitration for any and all claims arising out of or related to your work at home employment and the termination of that arrangement, including, but not limited to, claims for breach of this Work at Home agreement, unpaid wages, expense reimbursements, wrongful termination, torts, and/or discrimination (including harassment) based upon any federal, state or local ordinance, statute, regulation or constitutional provision." (Boldface omitted.) Sanders further

---

[2] According to the motion to compel arbitration, Edward Jones is a broker-dealer of securities operating as a Missouri limited partnership, with offices in all 50 states.

4

agreed to a waiver of "class or collective actions," whether brought in a court or arbitration, but the agreement did not restrict her right "to file in court a representative action under [the] California Labor Code." The agreement provided that any arbitration would be conducted by the Financial Industry Regulatory Authority (FINRA) or JAMS before a single neutral arbitrator in accordance with the "FINRA or JAMS employment arbitration rules then in effect."

On December 4, 2020 Edward Jones terminated Sanders's employment. On August 20, 2021 Sanders filed a putative class and representative action against Edward Jones. The first amended complaint alleged wage and hour causes of action under the Labor Code, a cause of action for violation of the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), and a "representative action" for civil penalties under PAGA.

B.     *Edward Jones's Motions To Compel Arbitration*

On February 4, 2022 Edward Jones filed a motion to compel Sanders to arbitrate her individual Labor Code and UCL claims, dismiss the putative class claims, and stay the PAGA cause of action. On June 2, 2022 the trial court granted the motion, finding Sanders's wage and hour claims were related to her work-at-home employment and were subject to the arbitration agreement. The court ordered the non-PAGA claims to arbitration, dismissed the class claims, and stayed the PAGA cause of action.

Following the Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, the trial court granted Edward Jones's second motion to compel arbitration "as to the individual PAGA claim." The court subsequently stayed

5

the representative PAGA claim to allow the JAMS arbitration to proceed.

C.     *Edward Jones's Late Payment of the Arbitration Fees*

On November 29, 2022 Sanders initiated the arbitration with JAMS by filing a demand. On December 15, 2022 JAMS sent Edward Jones an invoice for a nonrefundable $1,350 filing fee. On January 30, 2023 JAMS sent Edward Jones an invoice for an $8,000 service fee deposit "[t]o be applied to professional time . . ., expenses, and case management fees." Edward Jones timely paid both invoices.

On March 30, 2023 the arbitrator, Judge Melinda Johnson (Ret.), sent to the parties "Scheduling Order Number One," which described Sanders's claims, set an April 22, 2024 arbitration date, and set a schedule for discovery, preparation of a joint exhibit list, and filing of hearing briefs. The scheduling order stated "[t]he [a]rbitrator will apply California substantive law and JAMS Employment Rules and Procedures." The order indicated that "[a]rbitration fees must be deposited in advance of the hearing, by the deadline which will be confirmed in correspondence from JAMS."

Formal discovery commenced on May 8, 2023. On December 22, 2023 JAMS sent a notice of hearing to all parties stating the arbitration would be held before Judge Johnson from April 22 through April 26, 2024. The notice further stated "[a]ll fees are due upon receipt" and attached an invoice for $54,000 as a deposit for services, which likewise indicated at the bottom, "Payment is due upon receipt." The notice advised, "All fees must be paid prior to service of an award which the Arbitrator has rendered," followed by a highlighted cautionary note in boldface:

6

"Please see California Code of Civil Procedure sections 1281.97–1281.99 regarding payment of fees for this arbitration." The attached General Fee Schedule, consistent with the notice, provided, "All fees are due and payable in advance of services rendered and by any applicable due date as stated in a hearing confirmation letter."

On the morning of January 26, 2024 JAMS sent an email to the parties again attaching the December 22 invoice for $54,000 and stating the invoice "remains due in the above-referenced matter. Fees were due upon receipt," and payment was required "in order to move forward with the arbitration hearing." Three and a half hours later counsel for Sanders emailed counsel for Edward Jones stating Edward Jones was "in material breach of the pertinent arbitration agreement by failing to pay fees in the sum of $54,000 within 30 days of the due date pursuant to CCP 12[81.98]" and Sanders reserved her right under section 1281.98 "to return this case to Superior Court and, further, reserves her right to immediately close [the] JAMS file for this case as respondent's failure to pay is a waiver of their ability to pursue arbitration." That afternoon counsel for Edward Jones paid the $54,000 due by an online transaction.

D. *The Trial Court's Denial of Sanders's Motion To Withdraw from Arbitration*

On February 1, 2024 Sanders filed in the trial court a motion to vacate the order compelling claims to arbitration and requesting the court lift the stay, citing section 1281.98, subdivision (c)(2). Sanders argued Edward Jones's "deadline to pay the deposit . . . for the anticipated arbitration was January 21, 2024; Defendant failed to pay by the deadline. . . . [¶] . . . [¶]

7

[E]ven if Defendant eventually pays the arbitration fees, this late payment still constitutes a material breach and default of the arbitration agreement."  Sanders requested monetary sanctions of $5,860 pursuant to sections 1281.98 and 1281.99.

Edward Jones argued in its opposition, among other things, that "applying section 1281.98 to avoid [Sanders's] agreement to arbitrate her claims in this case would violate the 'equal treatment' principle applicable to the FAA as articulated by the U.S. Supreme Court."

On May 1, 2024, after oral argument and supplemental briefing, the trial court denied the motion.  The court explained that while it "agrees intellectually" with the dissent in *Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319, 1326, review granted June 12, 2024, S284498 that the FAA preempted section 1281.98, the court was required to follow the majority opinion and the other Court of Appeal decisions that similarly found no preemption.  Accordingly, the trial court orally granted Sanders's motion to vacate the order compelling arbitration and awarded Sanders $5,800 in attorneys' fees.

In an unusual turn of events, however, on June 3, 2023 (before the trial court signed the order granting Sanders's motion), Edward Jones submitted new authority and requested the trial court reconsider its ruling.  On July 15, 2024, after hearing further argument from counsel, the court vacated its May 1, 2024 ruling and denied Sanders's motion to vacate the order compelling arbitration, finding section 1281.98 (and a parallel provision for late payment of initial filing fees in section 1281.97) "are now preempted pursuant to the Second District of the California Court of Appeal-issued decision" in *Hernandez v. Sohnen Enterprises, Inc.* (2024) 102 Cal.App.5th

8

222, review granted August 21, 2024, S285696 (*Hernandez*) and *Belyea v. GreenSky, Inc.* (N.D. Cal. 2022) 637 F.Supp.3d 745.  The court certified its order under section 166.1.[3]

E.      *Sanders's Petition for Writ of Mandate*

On September 13, 2024 Sanders filed a petition for writ of mandate (amended a few days later) seeking an order directing the trial court to vacate its order denying the motion to vacate the order compelling arbitration and to enter a new order granting the motion.  At our request, Edward Jones filed a preliminary opposition, and on October 15 we issued an order to show cause.  Edward Jones filed a return, and Sanders filed a reply.

## DISCUSSION

A.      *Standard of Review*

"'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.'"  (*Prang v. Los Angeles County Assessment Appeals Bd.* (2024) 15 Cal.5th 1152, 1170; accord, *McHugh v. Protective Life*

---

[3]      Section 166.1 provides, in pertinent part, "Upon the written request of any party or his or her counsel, or at the judge's discretion, a judge may indicate in any interlocutory order a belief that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation."  However, "[s]ection 166.1 'does not change existing writ procedures or create a new level of appellate review.'"  (*Bank of America Corp. v. Superior Court* (2011) 198 Cal.App.4th 862, 869, fn. 6.)

9

*Ins. Co.* (2021) 12 Cal.5th 213, 227.) "'We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose.'" (*Prang*, at p. 1170; accord, *McHugh*, at p. 227.) "'We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme.'" (*Prang*, at p. 1170; accord, *McHugh*, at p. 227.) "If the relevant statutory language permits more than one reasonable interpretation, we look to appropriate extrinsic sources, such as the statute's purpose, legislative history, and public policy." (*Prang*, at p. 1170; accord, *McHugh*, at p. 227 ["If the relevant statutory language is ambiguous, we look to appropriate extrinsic sources, including the legislative history, for further insights."].)

Whether the FAA preempts section 1281.98 presents a pure question of law we review de novo. (See *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10 ["federal preemption presents a pure question of law"]; *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 778 (*Espinoza*) [same]; *Spielholz v. Superior Court* (2001) 86 Cal.App.4th 1366, 1371 ["Preemption is a legal issue involving statutory construction and the ascertainment of legislative intent, which we also review de novo."].)

B. *Senate Bill Nos. 707 and 762*

In 2019 the Legislature enacted Senate Bill No. 707 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 870, §§ 3-5), effective January 1, 2020 (Senate Bill 707), which amended the CAA to add sections 1281.97, 1281.98, and 1281.99. Section 1281.98,

10

subdivision (a)(1), now provides,[4] "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach."[5]

According to the drafters of the bill, a "concerning and troubling trend has arisen in arbitration: employers are refusing to pay required fees to initiate arbitration, effectively stymieing the ability of employees to assert their legal rights." (Sen. Rules Com., Off. of Sen. Floor Analysis, 3d reading analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.), as amended May 20, 2019, p. 4.) Therefore, "to stop behavior that would undermine the intent of Congress" and "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible,"

---

[4]    As we discuss below, section 1281.98 was amended in 2022.

[5]    Section 1281.97, subdivision (a)(1), contains an almost identical provision for failure to pay "the fees or costs to initiate an arbitration proceeding" within 30 days after the due date. Section 1281.99 provides, with respect to a default under section 1281.97 or 1281.98, for imposition of monetary, evidentiary, terminating, or contempt sanctions. We focus on section 1281.98 in this opinion, but the same analysis applies to a drafting party's failure to timely pay arbitration initiation fees under section 1281.97.

11

Senate Bill 707 provides that a drafting party's failure within 30 days of the due date to pay fees or costs to commence or continue an arbitration constitutes a material breach of the agreement, waiving the drafting party's right to compel arbitration, and authorizing the employee or consumer to compel arbitration or proceed in court.  (*Id.* at pp. 1 & 4; see *Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1068 (*Williams*) ["the purpose of the statute is to incentivize timely payment and to provide procedural redress for employees and consumers whose arbitration is delayed by the drafting party's nonpayment"].)

Further, sections 1281.97 and 1281.98 were amended in 2021 by Senate Bill No. 762 (2021-2022 Reg. Sess.) (see Stats. 2021, ch. 222, § 3, eff. Jan. 1, 2022) to include requirements that the arbitration provider send an invoice for fees and costs due upon the initiation of the arbitration (§ 1281.97, subd. (a)(2)) and continuation of the arbitration (§ 1281.98, subd. (a)(2)) to ensure the drafting party does not evade the 30-day deadline for payment by concealing the payment schedule from the employee or consumer.  As the Court of Appeal recently observed in *Colon-Perez v. Security Industry Specialists, Inc.* (2025) 108 Cal.App.5th 403, 419-420, review granted April 16, 2025, S289702 (*Colon-Perez*), "the Legislature reiterated its intent [in Senate Bill No. 762] that the 30-day period is an inflexible mandate.  This legislation was another effort to 'ensure that arbitration providers do not delay collection of fees in an attempt to circumvent the intent of [Senate Bill] 707.'  (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 762 (2021-2022 Reg. Sess.) as amended June 14, 2021 [Sen. Com. on Judiciary report on Sen. Bill No. 762], p. 2.)  The bill

12

would [clarify Senate Bill 707] . . . to encourage transparency around the due date of arbitration fees in order to prevent unnecessary delays in the resolution of disputes for workers and consumers bound by forced arbitration provisions.  Regrettably, we've learned that since [Senate Bill] 707's passage, companies are still able to evade enforcement of the above protections because consumers and employees are not informed about when the fees are due, whether the due date is extended, or whether the fees are paid on time.'"  The *Colon-Perez* court continued, "'By requiring arbitration providers to set a due date in writing for payments, and permitting the plaintiff to have input into potential extensions of due dates, this bill is intended to prevent arbitration providers from delaying payment in order to put off the strict 30-day deadline for payment required by [Senate Bill] 707.'"  (*Colon-Perez*, at p. 420, quoting Sen. Com. on Judiciary report on Sen. Bill No. 762, pp. 2-3.)

C.     *Under Section 1281.98, the Trial Court Decides Whether the Drafting Party Has Defaulted*

Edward Jones contends the arbitration agreement delegates to the arbitrator whether there has been a default for failure to pay required fees under section 1281.98.  Edward Jones argues the language in paragraph 1 of the arbitration agreement, requiring arbitration of "claims for breach of this Work at Home agreement . . . based upon any federal, state or local ordinance, statute, regulation or constitutional provision," by its plain language includes arbitration of a material breach of the agreement under section 1281.98.  Further, it asserts, the parties agreed to follow the JAMS Employment Rules and Procedures, which in rule 11 state the arbitrator will decide disputes over

13

"'*interpretation or scope* of the agreement under which Arbitration is sought.'" Edward Jones's contention lacks merit.

We agree with the reasoning in *Williams*, *supra*, 86 Cal.App.5th at page 1069 and *Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073 at page 1079 (*Cvejic*), which rejected the same argument made here—that an employee or consumer must first request the arbitrator make a determination whether there is a default under section 1281.98 to support withdrawal from arbitration and filing of a motion to vacate in the trial court. The court in *Williams* observed, "Nothing in the plain language of section 1281.98 purports to condition the consumer's unilateral election upon an initial arbitral determination of breach. Nor does anything in section 1281.98's concrete definition of breach, default, and waiver require such a determination: at issue is payment, or not, by a specified date, comparable to the failure of a litigant to pay jury fees or to timely file an answer, which are typically matters of ministerial record keeping rather than adjudicative factfinding." (*Williams, supra*, 86 Cal.App.5th at p. 1066.) The court in *Williams* concluded, "Requiring the employees or consumers to remain in arbitration to secure a default—from an arbitrator who did not receive timely payment and may still remain unpaid—invites the very abuse that the statute is intended to eradicate. We decline to impose this burden on the intended beneficiaries of the statute, even if they may independently elect to submit the issue of default to the arbitrator." (*Id*. at p. 1068; see *Cvejic, supra*, 92 Cal.App.5th at p. 1079 ["The point [of § 1281.98] was to take this issue away from arbitrators, who may be financially interested in continuing the arbitration and in pleasing regular clients."].)

The fact the arbitration agreement provided for the arbitrator to decide whether there has been a breach of the work at home agreement does not support a different result. As discussed, section 1281.98 sets forth the consequences of a failure of the drafting party to timely pay arbitration fees, vesting the employee or consumer with the right "unilaterally" to "proceed in a court of appropriate jurisdiction." Nothing is left for the arbitrator to decide. The fact the default is described in the statute as a "material breach" does not mean there is a factual issue for the arbitrator. As the Court of Appeal underscored in *Cvejic*, "[t]he statute's intent for the trial court to decide this statutory issue controls." (*Cvejic, supra*, 92 Cal.App.5th at p. 1079; see *Williams, supra*, 86 Cal.App.5th at p. 1069 [§ 1281.98's provision for employees and consumers to unilaterally withdraw from arbitration and proceed in a court of appropriate jurisdiction "compels the conclusion that the Legislature intended courts to exercise jurisdiction over such proceedings, as a matter of positive law"].)

Edward Jones urges us to follow the Ninth Circuit's nonpublished memorandum decision in *Dekker v. Vivint Solar, Inc.* (9th Cir. Oct. 26, 2021, No. 20-16584), 2021 U.S. App. LEXIS 32092, at pages *2 and *4, which held that "[b]ecause this dispute concerns whether [the employer] breached the arbitration agreements, it falls within the scope of the parties' delegation clause" that delegated to the arbitrator issues concerning "'breach, default, or termination.'" But as *Cvejic* observed in declining to follow *Dekker*, the Ninth Circuit "declined to analyze or apply the statute's language." (*Cvejic, supra*, 92 Cal.App.5th at p. 1079.) Further, as a nonpublished memorandum decision, *Dekker* is not precedential in federal court, "except when relevant

15

under the doctrine of law of the case or rules of claim preclusion or issue preclusion." (U.S. Cir. Ct. Rules (9th Cir.), rule 36-3.) We see no reason to follow *Dekker* instead of the well-reasoned line of California authority analyzing the language and legislative history of sections 1281.97 and 1281.98.

Finally, nothing in JAMS rule 11 limits or overrides a trial court's authority to apply section 1281.98. (Cf. *Espinoza*, *supra*, 83 Cal.App.5th at p. 787 ["Section 1281.97 . . . concerns the actions the trial court may take upon nonpayment, including lifting the litigation stay so the matter may proceed in court and imposing sanctions. Nothing in the AAA rules [providing that an arbitrator has discretion to suspend or terminate arbitration proceedings upon non-payment of fees and costs] purports to limit or modify the trial court's powers in that regard, and plaintiff's agreement to abide by the AAA rules therefore cannot constitute a waiver of her right to invoke those powers."].)

D. *Edward Jones Was in Default Under Section 1281.98 for Failure To Timely Pay the Arbitration Fees*

Edward Jones contends that even if section 1281.98 applies, it timely paid the fees under the payment deadlines set by JAMS and "nothing in the record establishes that JAMS required the December 22 invoice to be paid within 30 days of receipt." There is substantial evidence to the contrary.[6]

---

[6] We review the trial court's implied finding that Edward Jones failed to timely pay the arbitration fees as required under section 1281.98 (which the court made as part of its initial ruling granting the motion to vacate) for substantial evidence. (*Trujillo v. J-M Manufacturing Company, Inc.* (2024) 107 Cal.App.5th 56, 64; *Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 353.) To the

16

JAMS rule 31(a) provides, "unless the Parties have agreed to a different allocation, each Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration." The JAMS general fee schedule states, in turn, "All fees are due and payable in advance of services rendered and by any applicable due date as stated in a hearing confirmation letter."

As discussed, the notice of hearing sent by JAMS to the parties stated "[a]ll fees are due upon receipt" and attached the $54,000 deposit for services. Moreover, the notice specifically directed the parties to "see California Code of Civil Procedure sections 1281.97-1281.99 regarding payment of fees for this arbitration."

Although Edward Jones argues its failure to timely pay the fees was unintentional,[7] "nothing in section 1281.98 as drafted depends on the intent or good faith of a particular drafting party in a specific case . . . . [T]he Legislature in enacting

---

extent Edward Jones contends that under section 1281.98 it should be excused for its unintentional failure to pay the fees by the deadline, we review this question of law de novo. (*Trujillo*, at p. 64.)

[7] According to the declaration of attorney Rudolph G. Klapper submitted in opposition to Sanders's motion to vacate, "Venable maintains a firm-wide administrative rule requiring that clients be billed for any case-related, third-party invoices over a certain amount, and that the client's bill be subsequently paid, before said invoice can be paid by the firm. The $54,000 December 22 invoice exceeded Venable's threshold for third-party invoices. Venable's billing department consequently added the $54,000 December 22 invoice to Edward Jones['s] bill for the following month."

17

sections 1281.97 and 1281.98 chose to neither require nor permit an inquiry into the reasons for a drafting party's nonpayment." (*Williams, supra*, 86 Cal.App.5th at p. 1074; accord *De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 755 ["the statute's 30-day deadline establishes a clear-cut rule for determining if a drafting party is in material breach of an arbitration agreement"]; *Espinoza, supra*, 83 Cal.App.5th at p. 776 ["The plain language [of § 1281.97] therefore indicates the Legislature intended the statute to be strictly applied whenever a drafting party failed to pay by the statutory deadline."].) Thus, because Edward Jones did not timely pay the mandatory arbitration fees within 30 days, it was in default under section 1281.98, subdivision (a).[8]

---

[8] Edward Jones argued in its return that under section 473, subdivision (b), it should be relieved from the deadline under section 1281.98, subdivision (a), as a result of attorney error. That motion is not before us. Although Edward Jones made a request under section 473 as an argument in its opposition to Sanders's motion to vacate the order compelling arbitration, the court never reached Edward Jones's section 473 request. In any event, relief is not available under section 473, subdivision (b), because "an order pursuant to section 1281.98 vacating an order to arbitrate is not a 'default,' 'default judgment,' or 'dismissal' within the meaning of the mandatory relief provisions of section 473(b)." (*Colon-Perez, supra*, 108 Cal.App.5th at p. 417, review granted.) Any other interpretation of section 473, subdivision (b), would be inconsistent with sections 1281.97 and 1281.98, which, "for the sake of ensuring expeditious resolution of disputes, limit[] the arguments a drafting party may raise when it fails timely to pay its required fees, for example barring arguments that the failure was excusable or nonprejudicial." (*Espinoza, supra*, 83 Cal.App.5th at p. 784.)

18

E.    *The CAA Procedural Rules Apply to the Arbitration*

Edward Jones contends that because it is engaged in interstate commerce, the FAA's procedural rules apply, and not section 1281.98. Edward Jones has it backwards—absent an agreement to the contrary, the FAA's *substantive* provisions apply to written contracts involving interstate commerce (9 U.S.C. § 1 et seq.), but not the FAA's procedural rules. (See *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 389 (*Cronus*) ["the United States Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings"]; *Swissmex-Rapid S.A. de C.V. v. SP Systems, LLC* (2012) 212 Cal.App.4th 539, 544 ["The FAA's substantive provisions are applicable in state as well as federal court, while the FAA's procedural provisions apply only to proceedings in federal court."]; see also *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 476 (*Volt*) ["There is no federal policy favoring arbitration under a certain set of procedural rules."].)

Accordingly, the FAA's procedural provisions apply in federal court proceedings related to arbitration; the CAA's procedural requirements apply to proceedings in California courts absent the parties' agreement to apply federal procedural law. (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 174 ["Absent such an express designation, however, the FAA's procedural provisions do not apply in state court."].)

In this case, the arbitration agreement is silent as to whether the procedural provisions of the FAA or CAA apply to the arbitration agreement. Edward Jones points to the

19

arbitrator's scheduling order number one, which states "[t]he arbitrator will apply California substantive law and JAMS Employment Rules and Procedures."  And JAMS rule 4 states that where there is a conflict between the JAMS rules and "applicable law," the applicable law will govern the conflict. Here, there is no conflict—neither the arbitration agreement nor the JAMS rules specify which procedural rules apply, and accordingly, "the parties implicitly consented to application of the CAA's procedural provisions, as much as had they expressly incorporated those provisions into their arbitration agreement." (*Espinoza, supra*, 83 Cal.App.5th at p. 786; accord, *Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 631 [California's procedural provisions apply when an arbitration agreement "does not mention the FAA or the CAA, and . . . does not include a choice-of-law provision."].)  Thus, section 1281.98 is implicitly incorporated into the agreement and applies to the arbitration.

F.     *The FAA Does Not Preempt Section 1281.98*

"The FAA makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'  9 U.S.C. § 2.  That statutory provision establishes an equal-treatment principle:  A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'  [Citation.]  The FAA thus preempts any state rule discriminating on its face against arbitration—for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.'" (*Kindred Nursing*

20

*Centers Ltd. Partnership v. Clark* (2017) 581 U.S. 246, 251; accord, *Viking River Cruises, Inc. v. Moriana, supra*, 596 U.S. at p. 650.)

The FAA also preempts "any rule that covertly accomplishes the same objective by disfavoring contracts that . . . have the defining features of arbitration agreements." (*Kindred Nursing, supra*, 581 U.S. at p. 251; accord, *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1143 [the FAA preempts facially neutral state law rules that "disfavor arbitration *as applied* by imposing procedural requirements that 'interfere[] with fundamental attributes of arbitration,' especially its '"lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."'"]; *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 637 (*Gallo*).) In addition, a state law will be preempted by the FAA if it "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (*Volt, supra*, 489 U.S. at p. 477; accord, *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 343.)

As the Supreme Court emphasized in *Volt, supra*, 489 U.S. at page 478, however, passage of the FAA "'was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered.'" Further, as our colleagues in Division Two of this district explained in *Gallo*, "The second fundamental attribute of arbitration is its 'promise of quicker, more informal, and often cheaper [dispute] resolutions for everyone involved.'" (*Gallo, supra*, 81 Cal.App.5th at p. 641, quoting *Epic Systems Corp. v. Lewis (*2018) 584 U.S. 497, 505.)

The *Gallo* court applied these preemption principles in rejecting an employer's argument that sections 1181.97 and

1281.99 are preempted by the FAA, explaining that in light of the legislative history of Senate Bill 707, "sections 1281.97 and 1281.99 do not commit the additional . . . sin of outright prohibiting arbitration or more subtly discouraging arbitration. Instead, sections 1281.97 and 1281.99 define the procedures governing *the date by which* the party who drafted an agreement to arbitrate against an employee or consumer must pay the initial fees and costs to arbitrate, and specify *the consequences* of untimely payment. . . . In this respect, sections 1281.97 (and its attendant sanctions-provision, § 1281.99) are akin to a statute of limitation." (*Gallo, supra*, 81 Cal.App.5th at p. 641.) Further, "sections 1281.97 and 1281.99 *facilitate* arbitration by preventing parties from insisting that a dispute be resolved through arbitration and then sabotaging that arbitration by refusing to pay the fees necessary to move forward in arbitration." (*Id.* at p. 643.)[9]

We agree with the reasoning in *Gallo*, as do all but one of the appellate courts that have considered this issue. (See *Colon-Perez, supra*, 108 Cal.App.5th at pp. 408-409, review granted ["We recently addressed whether the FAA preempts section 1281.98. . . . We concluded it does not, as have all but one of the Courts of Appeal that have considered the issue."]; *Keeton v. Tesla, Inc.* (2024) 103 Cal.App.5th 26, 40 (*Keeton*), review granted Sept. 11, 2024, S286260 ["As we have explained, section 1281.98 furthers, rather than hinders, the FAA's

_____

[9] The *Gallo* court observed that section 1281.98 has "largely parallel" provisions to section 1281.97, and thus, the court's "analysis applies with equal force" to section 1281.98. (*Gallo, supra*, 81 Cal.App.5th at p. 633, fn. 4.)

22

objectives."]; *Hohenshelt, v. Superior Court, supra*, 99 Cal.App.5th at p. 1326, review granted ["This incentive to speed arbitration in other cases means the California statute 'is a friend of arbitration and not its foe.'"]; *Suarez v. Superior Court of San Diego County* (2024) 99 Cal.App.5th 32, 42-43 ["We follow the precedent set in *Gallo* and *Espinoza* to conclude that section 1281.97 neither prohibits nor discourages the formation of arbitration agreements.  Rather, the statute regulates the conduct of the parties to help 'achieve the FAA's goal of "safeguarding arbitration."'  [Citation.]  The rules are designed to encourage drafters of arbitration agreements to engage in arbitration promptly."]; *Espinoza, supra*, 83 Cal.App.5th at p. 771 ["[T]he statute set forth procedural requirements to ensure timely payment of arbitration fees, thus '*further[ing]*—rather than *frustrat[ing]*—the objectives of the FAA to honor the parties' intent to arbitrate and to preserve arbitration as a speedy and effective alternative forum for resolving disputes.'"].)

The only California case finding preemption is the decision of Division Five of this district in *Hernandez, supra*, 102 Cal.App.5th 222, review granted.  In *Hernandez*, the employer failed to pay the initial arbitration fee within 30 days, and the trial court granted the employee's motion to withdraw from arbitration pursuant to section 1281.97.  (*Id.* at pp. 230-231.)  On appeal, the majority opinion concluded the FAA's substantive and procedural provisions applied to the arbitration, and therefore, "the CAA does not apply and the order under section 1281.97 must be reversed." (*Id.* at p. 238.)  The court stated in the alternative that even if the CAA applied, it was preempted by the FAA, reasoning "section 1281.97 violates the equal-treatment principle because it mandates findings of

23

material breach and waiver for late payment that do not apply generally to all contracts or even to all arbitrations.  Under California contract law, defenses to enforcement of a contract are generally questions for the trier of fact and subject to doctrines such as substantial compliance, but section 1281.97 imposes a stricter requirement, mandating a finding of material breach and waiver as a matter of law in consumer and employment arbitration contracts, and making it harder to enforce arbitration agreements in those matters." (*Id.* at p. 243.)

The majority opinion in *Hernandez* disagreed with the reasoning in *Gallo* and subsequent cases that found no preemption on the basis section 1281.97 (like section 1281.98) furthers the goals of the FAA by encouraging or facilitating arbitration.  (*Hernandez, supra*, 102 Cal.App.5th at p. 243, review granted.)  The *Hernandez* court explained, "The drafting party already has an incentive under California contract law to make timely payments in order not to waive the right to arbitrate.  Section 1281.97 limits the enforceability of certain types of arbitration agreements by allowing consumers and employees to elect to avoid arbitration even in cases of minor, inadvertent, or inconsequential delay.  Imposing a higher standard for enforcement of arbitration agreements in consumer and employee disputes is contrary to the FAA's policy to ensure arbitration agreements are as enforceable as other contracts.  In addition, section 1281.97 frustrates the FAA's objective of cheaper, more efficient resolution of disputes by increasing the overall cost of litigation and wasting resources already invested toward arbitration." (*Id.* at p. 244.)

We do not find persuasive the reasoning in *Hernandez* because the Legislature, in enacting sections 1281.97 and

24

1281.98, found precisely the opposite—that employers were refusing to pay arbitration fees in an effort to stymie the ability of employees to assert their rights by preventing the arbitration from moving forward. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.), as amended May 20, 2019, p. 4.) And, as the dissent in *Hernandez* pointed out, the majority opinion had not "provided any reason to think the Legislature was unjustified in believing that delays for nonpayment of arbitration fees were most prevalent and problematic in certain consumer and employment arbitrations." (*Hernandez, supra*, 102 Cal.App.5th at pp. 248-249 (dis. opn. of Baker, J.), review granted.) The dissent concluded, "Put simply, it is a real stretch—and a stretch too far—to say the Federal Arbitration Act is offended by a state law that requires prompt payment of arbitration fees." (*Id*. at p. 249.)

Edward Jones also contends the California Supreme Court's recent decision in *Quach, supra*, 16 Cal.5th at pages 582 to 583 supports an argument that section 1281.98 is preempted by the FAA because it is an arbitration-specific rule that treats arbitration contracts differently from other contracts, even if the rule was adopted to favor arbitration. In *Quach*, the court eliminated the judicially created requirement for a party opposing arbitration to show prejudice to establish the moving party's waiver of the right to arbitrate, explaining California's arbitration-specific prejudice requirement was based on "federal circuit court precedent reflecting the faulty understanding of the federal policy favoring arbitration," which the Supreme Court in *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418 (*Morgan*) "corrected." (See *Quach*, at p. 582 ["Because the state law arbitration-specific prejudice requirement finds no support in

25

statutory language or legislative history, we now abrogate it."].)
The court in *Quach* explained, "[A] court should treat the
arbitration agreement as it would any other contract, without
applying any special rules based on a policy favoring arbitration."
(*Quach*, at p. 583, citing *Morgan*, at p. 418.)

Contrary to Edward Jones's contention, *Quach* and *Morgan*
did not expand the scope of preemption under the FAA. Indeed,
the United States Supreme Court in *Morgan, supra*, 596 U.S. at
page 418 quoted its nearly 50-year-old decision in *Prima Paint
Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 404,
fn. 12, in stating "[t]he [FAA's] policy is to make 'arbitration
agreements as enforceable as other contracts, but not more so.'"
(See *Cronus, supra*, 35 Cal.4th at p. 384 [same].) Moreover,
*Morgan* did not involve preemption of a state arbitration rule by
the FAA. Rather, the Supreme Court "granted certiorari to
decide whether the FAA authorizes federal courts to create such
an arbitration-specific procedural rule" (on waiver). (*Morgan*, at
p. 414; see *Keeton, supra*, 103 Cal.App.5th at p. 41, review
granted ["This case is distinguishable in that *Morgan* involved
rights asserted under federal law and therefore did not concern
preemption under section 2 of the FAA."].)[10]

Edward Jones argues section 1281.98, like the arbitration-
specific prejudice requirement for waiver at issue in *Quach* and
*Morgan*, is preempted by the FAA because it provides employees

---

[10] The court in *Morgan* relied on section 6 of the FAA
(9 U.S.C. § 6) (not at issue here), which provides that any
application under the FAA to compel arbitration or stay litigation
"'shall be made and heard in the manner provided by law for the
making and hearing of motions,'" unless the statute provides
otherwise. (See *Morgan, supra*, 596 U.S. at p. 419.)

26

and consumers "a unique method to unilaterally withdraw from contractually agreed-upon arbitrations to proceed with litigation in court," resulting in the drafting party's forfeiture of its right to arbitrate. However, unlike *Quach* and *Morgan*, section 1281.98 does not alter state law contract principles for arbitration agreements. Rather, section 1281.98 is a procedural rule contained in the CAA that specifies the 30-day grace period for the drafting party to pay arbitration fees and costs and the consequences for failure to timely pay.[11] As discussed, Edward Jones and Sanders implicitly consented to application of the CAA's procedural provisions. Thus, unlike the judicially created waiver requirement invalidated in *Morgan* and *Quach*, the parties here implicitly agreed in the arbitration agreement that section 1281.98 would apply to their arbitration. The fact section 1281.98 describes the consequences of a drafting party's failure to timely pay required fees and costs as a "material breach

---

[11] We therefore disagree with the reasoning in *Belyea v. GreenSky, Inc., supra,* 637 F.Supp.3d at page 750, in which a consumer plaintiff filed a motion in the district court seeking to terminate an arbitration and proceed in court under section 1281.97 after the defendant failed to timely pay a bill from JAMS that stated "'payment due upon receipt.'" The district court denied the plaintiff's request, holding section 1281.97 was preempted under the equal-treatment principle "because it makes arbitration provisions unenforceable on arbitration-specific grounds," reasoning the 30-day deadline under sections 1281.98 and 1281.98 "is a substantive modification of California contract law with respect to waiver and material breach." (*Id.* at pp. 756-757.) As discussed, the 30-day deadline does not substantively modify California contract law.

of the arbitration agreement" and waiver of the drafting party's "right to compel the employee or consumer to proceed with that arbitration" does not transmute a mutually agreed-upon contract provision into a judicially created change in state contract law. Just as the parties to a contract for the sale of widgets can agree upon what constitutes a breach of the contract, parties to an arbitration agreement can agree that section 1281.98 applies to their arbitration agreement.

Moreover, section 1281.98 is like other arbitration-specific procedural rules, including the deadlines in section 1288 for filing a petition to confirm or vacate an arbitration award and the provision in section 1281.2, subdivision (c), for a court to stay an arbitration pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by the agreement, where "there is a possibility of conflicting rulings on a common issue of law or fact." (*Volt, supra*, 489 U.S. at p. 479 [rejecting preemption challenge to § 1281.2, subd. (c), explaining that where "the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward"]; *Keeton, supra*, 103 Cal.App.5th at p. 37, review granted ["we agree with *Gallo* that section 1281.98 is akin to a statute of limitations, as it does not speak to the enforceability of the arbitration agreement itself"]; *Gallo, supra*, 81 Cal.App.5th at p. 642 [§§ 1281.97 and 1281.99 "are functionally indistinguishable from other provisions

of the CAA . . . such as sections 1281.2 and 1281.6 . . . that have been repeatedly found *not* to be preempted by the FAA"].)[12]

Accordingly, although section 1281.98 singles out arbitration agreements, it is only preempted if it "would undermine the goals and policies of the FAA." (*Volt, supra*, 489 U.S. at pp. 477-478; see *Cronus, supra*, 35 Cal.4th 376, 394 [§ 1281.2, subd. (c), is not preempted by the FAA because it "does not undermine or frustrate the FAA's substantive policy favoring arbitration"]; *Keeton, supra*, 103 Cal.App.5th at p. 40, review granted ["[I]n deciding whether a procedural rule discriminates against arbitration, it is not enough that the rule treats arbitration contracts differently than other types of contracts. Rather, the question is whether application of the rule 'would undermine the goals and policies of the FAA.'"]; *Gallo, supra*, 81 Cal.App.5th at p. 639 ["declaring the factor of whether a state law 'singles out' arbitration to be the sine qua non of preemption would invalidate the CAA and every other state's arbitration laws like it; that is antithetical to the very purpose of the FAA to *encourage* arbitration"].)

Imposing a 30-day time limit to pay arbitration fees neither frustrates nor hinders arbitration. Section 1281.98 does not "affect the enforceability of the arbitration agreement itself." (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 688; accord, *Keeton, supra*, 103 Cal.App.5th at p. 39, review granted ["[s]ection 1281.98 does not outright invalidate arbitration agreements, and it is not 'a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the

---

[12]     Section 1281.6 specifies the procedure for appointing an arbitrator if the arbitration agreement does not provide a method.

use of arbitration'"].)  Rather, as discussed, it is intended to promote the parties' intent to have an expedited and cost-efficient way to resolve their disputes.  (*Gallo*, *supra*, 81 Cal.App.5th at p. 643; see *ibid*. [the purpose of the agreement "was to arbitrate the dispute, not let it die on the vine and languish in limbo while the party who demanded arbitration thereafter stalls it by not paying the necessary costs in a timely fashion"].)

G.    *On Remand, The Trial Court Must Consider Sanders's Request for Monetary Sanctions*

Because the trial court denied Sanders's motion to vacate the order compelling arbitration, the court did not reach her request for monetary sanctions under section 1281.99 (although the court's order of May 1, 2024 initially concluded Sanders was entitled to $5,800 in monetary sanctions).  On remand, the trial court must consider Sanders's request for sanctions.

## DISPOSITION

The petition for writ of mandate is granted.  Let a peremptory writ of mandate issue directing the trial court to vacate its order denying Sanders's motion to withdraw from arbitration under section 1281.98, subdivision (b)(1), and allowing Sanders to pursue her claims in court.  On remand, the trial court should conduct further proceedings consistent with this opinion on Sanders's motion for sanctions under

30

section 1281.99, subdivision (a).  Sanders shall recover her costs on appeal.


                                        FEUER, J.

We concur:


        MARTINEZ, P. J.


        STONE, J.

31